ANNA R. FEHLING

*v.*

EVERETT C. GOINGS and C. B. COLES & SONS' COMPANY
et al.

[Filed July 26th, 1904.]

1. A written notice served upon the owner by a materialman under section 3 of the Mechanics' Lien act (*P. L. of 1898 p. 538*), if it complies with the statute in other respects, is not defective because it omits to state that a previous demand for payment of the sum claimed by the noticing party had been made upon the contractor; nor because served by an attorney or agent of the claimant and not by the claimant in person; nor because the agent of the claimant who demanded payment from the contractor or gave notice to the owner, was not authorized to act by a written power from the claimant.

2. Such notices may be efficiently served in any form or by any method which in effect gives the written notice prescribed by the statute.

3. It is only creditors of the contractor named in the filed contract who are entitled to serve stop notices under section 3 of the Mechanics' Lien act. Creditors of a sub-contractor have not that privilege.

4. The United States Bankrupt law of 1898 does not invalidate the right which a claimant acquired by serving a stop notice under section 3 of the Mechanics' Lien act of this state, although such service may be made within four months next preceding the filing of the petition in bankruptcy. The steps taken under said section 3 are not such assignments as are invalidated by the Bankrupt act, nor are they transfers by a bankrupt to hinder and defraud his creditors.

On bill of interpleader and claims of interpleading defendants.

This is an interpleader bill filed by Anna R. Fehling against Everett C. Goings and others.

The complainant employed the defendant Goings under a written contract to alter and repair her property, known as "The Hotel Vallaire," in Atlantic City.

The contract was filed in the Atlantic county clerk's office.

The contractor failed to pay the persons who furnished material and did work for him under the contract, and stop notices under the Mechanics' Lien act were served upon the complainant owner, claiming such large amounts that the sum remaining in the hands of the complainant, due or to become due to the defendant Goings, was insufficient to pay the lien claims in full.

The complainant files her bill, professing herself to be disinterested between the parties and ready to pay the balance in her hands to whomsoever it should be paid, but declaring that she cannot with safety make the payments until the parties have by interpleading with each other, settled their respecting rights

A decree of interpleader was allowed to the complainant, whereby she was ordered to deposit in this court the amount named in her bill, the sum of $5,249.75. The sum of $50 counsel fee and the taxed costs of her suit were ordered to be paid therefrom, and it was directed that the defendants should interplead and adjust their several claims in controversy between themselves.

The cause has come to a hearing upon the respective interpleading statements of the defendants as claimants upon the fund.

Many of the essentials necessary to be proven have been admitted to be true without formal proof by agreements of counsel made during the taking of the testimony and to be found in the stenographer's notes of the evidence, or in formal stipulations on file in the cause.

The defendant Bolte, trustee in bankruptcy of Goings, the contractor, though conceding without proof some of the incidents necessary to sustain the stop notices, required that the claimants should show compliance with the statutory requirements regarding demand upon the contractor and notice to the owner, &c. He claims all of the contract price not required to pay such claimants as are fully proven to have complied with the requirements of the statute.

*Mr. William I. Garrison,* for Fleck Brothers, Billings, King & Company and Charles H. Blaine.

*Mr. Louis A. Repetto,* for Sylvester Leeds.

*Messrs. Godfrey & Godfrey,* for Daniel B. Ingersoll.

*Mr. Henry F. Stockwell* and *Mr. Edwin G. C. Bleakly,* for C. B. Coles & Sons' Company.

*Messrs. Thompson & Cole,* for Somers Lumber Company, Somers Brick Company, Gabriel Garrison and the Phœnix Iron Company.

*Mr. William M. Clevenger,* for G. Arthur Bolte, trustee in bankruptcy of E. G. Goings, bankrupt.

GREY, V. C.

The rights of the several claimants will be considered and determined in the order of priority in point of time in which they became fixed.

The notice of Billings, King & Company was served on the owner on July 30th, 1901, claiming the sum of $322.60 under section 3 of the Mechanics' Lien statute. *P. L. of 1898 p. 538.* The sufficiency of this notice is disputed upon two grounds— *first,* that the notice served was signed by Billings, King & Company by attorney, while the statute provides that it shall be the duty of the journeyman, laborer or materialman to give the notice. As to this criticism the statute provides that whenever a contractor (in case of contract filed) shall upon demand refuse to pay any person who has furnished material used in the building, or any journeyman, &c., "it shall be the duty of the journeyman and laborer or materialman to give notice in writing to the owner of such refusal."

The statute does not prescribe that the notice served shall be signed by the journeyman, laborer or materialman who gives it, but only that he shall give notice in writing. The signature of the party noticing is proper to give the writing that verity which such a notice should have, but it is not so essential that its

absence would destroy the legal effect of the notice if all the statutory requirements were contained in the writing served.

In fact, in this case, the notice served is thus signed, at the end, "Billings, King & Co., Wm. I. Garrison, Attorney." The words "Billings, King & Co." are in manuscript. The words "Wm. I. Garrison, Attorney," are typewritten. It does not appear that the manuscript signature is not that of Billings, King & Company. The form in which the attorney's name is appended does not show that he was the actor. It does not say "Billings, King & Co., by Wm. I. Garrison, their attorney." If it did, it seems to me that it would still be as it now is, a notice in writing given by Billings, King & Company, as required by the statute. It appears without dispute that the claimants, Billings, King & Company, did in fact give to the owner the notice in writing above referred to. This they did by their agent. Service of these notices by the agent of the claimant has always been recognized as a compliance with the terms of the statute. If the present objection is forceful and a "Chinese" performance of the statutory requirements must be rendered, then this service must be made by the claimant; and if there be half a dozen members of a firm of claimants, by all of them acting at the same time in a body, for the same principle of law which enables one partner to act for the other partners enables an agent to act for his principal.

I am referred to the case of *Foster* v. *Rudderow, 3 Atl. Rep. 694,* as authority for the contention that the stop notice required by the statute (section 3) to be given to the owner must be signed by the journeyman, laborer or materialman who gives it. The decision referred to does declare, in its syllabus, that "a written demand made upon the owner by an agent, without any written authority from the principal, giving said agent power to receive the money due, may be properly disregarded by the owner." The text of the report of the case, however, shows that the paper criticised was not the stop notice required by section 3 to be served upon the *owner,* but a demand made upon the *contractor* that he should pay. The decision is therefore inapplicable on the present question whether the stop notice

given to the owner is required by section 3 of the statute to be signed by the noticing claimant.

That judgment is also made the basis of objection to the sufficiency of stop notices served on the owner where the previous demand for payment made upon the contractor was by some attorney-at-law or agent of the claimant, who was not shown to have been appointed agent or attorney of the claimant to demand payment for the contractor by some written authority. This does call up the very question which by the text of the report of the case of *Foster* v. *Rudderow* appears to have been decided—that decision was made under the Mechanics' Lien law as found in *Rev. Stat. 1877 p. 668 § 3.* The provisions of that act regarding the demand for payment to be made upon the contractor are the same as those in the act presently in force (*P. L. of 1898 p. 538 § 3*), and are as follows:

"SEC. 3. That whenever any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished materials used in the erection of any such house or other building, or any journeyman or laborer employed by him in the erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman, laborer or materialman to give notice in writing to the owner or owners of such building of such refusal and of the amount due to him or them and so demanded, and the owner or owners of such building shall thereupon be authorized to retain," &c.

It will be observed that the statute does not even specify that the demand upon the contractor for payment shall be made by the claimant, and makes no reference whatever to any requirement that if made by the claimant's agent the latter's authority shall be in writing. My impression of the case cited is that in the evidence taken, which does not appear in the report of *Foster* v. *Rudderow,* there was a challenge of the authority of the agent of the claimant to make the demand, and the testimony showed that he was not authorized.

On the essential question, it seems to me clear that the preliminary demand upon the contractor for payment may be made by the claimant in person, or by his duly-authorized agent or attorney, appointed either in writing or by parol. In this case the claimants appear here in court and base their claim

upon the demand for payment by their agent upon the contractor. It is therefore manifest that they authorized the demand made.

The notice served by Billings, King & Company was in writing, sufficiently verified by the name of the claimant appended thereto.

The second criticism of the Billings, King & Company notice is, that it does not mention that a demand had been made upon the contractor for the payment of the money claimed by them. The statute does not require notice in writing to be given to the owner that the claimant had demanded payment from the contractor. It requires only a written notice that the contractor had refused to pay. The object of the statutory provisions is to notify the owners of the contractor's refusal to pay in order that the owner may be required to retain from the contract price remaining in his hands a sufficient sum to pay the claim of the noticing party. A refusal to pay usually implies a previous demand made upon the party refusing.

The notice of Billings, King & Company sufficiently complies with the requirements of the statute and should be allowed for the sum of $322.60 as the first claim.

The notice of Charles H. Blaine was served upon the complainant on September 1st, 1901, to retain $230.

There is sufficient proof that the statutory requirements have been observed, and this notice of Charles H. Blaine is entitled to allowance as the second claim.

The stop notice of the defendant Charles B. Coles & Sons' Company was twice served, the first time on September 5th, 1901, for the sum of $3,805.18.

The objection to this notice by the trustee in bankruptcy of Goings, the contractor, is that the notice served on Miss Fehling (the owner), though narrating the refusal of Goings (the contractor) to pay the debt, does not state that a demand was made upon him, the same point above overruled on the challenge of the Billings claim. A second notice was served by the Coles company upon Miss Fehling, the owner, on December 17th, 1901, for the same sum, which recites a previous demand upon Goings

for payment. The latter notice was served because there was some question whether the previous notice served on September 5th was in the proper form.

The first notice served for Coles & Sons' Company, on September 5th, 1901, complied with the terms of the statute, and the proof here made shows that the sum of $3,805.18 should be allowed that company as the third claim.

The next stop notice was served by Daniel B. Ingersoll, on November 13th, 1901, upon the owner, to retain the sum of $153.

This notice conforms to the statutory requirements, and its supporting proofs entitle Mr. Ingersoll to the allowance of $153. as the fourth claim on the fund.

The Coles & Sons' Company, for assurance of their claim, served their second notice upon the owner on December 13th, 1901. This notice specifically states that a demand had been made on the contractor. I have heretofore held that the statute does not require the notice to the owner to state that a demand had been made on the contractor in order to make the stop notice effective. If the first notice of Coles & Sons' Company was for any reason ineffectual and failed to retain the money due them, this notice of December 13th, 1901, would entitle them to be paid as of the latter date.

The next stop notice was served on January 25th, 1902, by the Somers Lumber Company, for the sum of $375. By consent, this claim was proved by filing an affidavit, which has been marked *Exhibit Somers No. 1,* and sufficiently proves demand and refusal and legal notice to the owner to retain. This entitles the Somers Lumber Company to the fifth claim, to the amount of $375.

The Somers Brick Company, in like manner, made proof of a notice served on the same day (January 25th, 1902), which entitles that company to the sixth claim, to the amount of $10.

A stop notice is produced by the defendants Fleck Brothers, claiming the sum of $475. There is proof of the time (about July 1st, 1901) when demand for payment of this sum was made upon Goings, the contractor, and of his refusal to pay it,

but no evidence is submitted to show that it was in fact served on the owner nor when any such service was made. The stop notice offered in evidence has no date.

It is not a sufficient compliance with section 3 of the statute to prove only that payment was demanded and refused to be made by the contractor, and then produce a stop notice addressed to the owner, without showing by evidence that such notice was ever served upon him. For want of proof that notice in writing was given to the owner, this claim must be rejected.

Another objection which would prevent the allowance of this claim is that the evidence shows that the materials for the value of which Fleck Brothers claim payment of the $475 were not furnished to Mr. Goings, the contractor, but to Messrs. Sheppard & Hackney, sub-contractors, who had been employed by Mr. Goings. The remedy provided by the third section extends only to creditors of the contractor named in the filed contracts. *Carlisle* v. *Knapp, 51 N. J. Law (22 Vr.) 332 (Court of Errors and Appeals).*

By special filed stipulation, the trustee defendant admits that the stop notices of the defendants Gabriel Garrison and the Phœnix Iron Company were served on the owner on January 27th, 1902, subject to the objections raised by him regarding their legality.

These objections have been determined unfavorably to the contentions of the trustee in the previous discussions of the claim of Billings, King & Company. The other objections will be hereinafter considered, as the theory upon which they rest affects all stop notices served after September 27th, 1901—that is, within a period of four months next preceding the filing of the petition in bankruptcy against Goings, the contractor.

The stop notice of Gabriel Garrison was served on January 25th, 1902, claiming $186.03. The effect of all the proofs and admissions regarding this claim show compliance with the statutory requirements. It is allowed as the seventh claim entitled to payment from the fund, $186.03.

The stop notice of the Phœnix Iron Company, served on Janu-

ary 27th, 1902, is in the same situation and is allowed as the eighth claim, of $93.10.

The stop notice of Sylvester Leeds is mentioned in the bill of complaint and is supported by a statement of claim filed in the cause. The testimony shows that a demand for payment of this claim was made upon Goings, the contractor, and that he refused to pay it, but no proof is made that any written notice of that refusal was given to Mrs. Fehling, requiring her to retain the amount. For this reason this claim is not allowed.

Sheppard & Hackney file a statement, claiming $897.55, as noticed on September 1st, 1901, to be retained by the owner. No proof whatever was made of compliance by the claimants with the requirements of the statute.

Other stop notices appear to have been served, and the claimants serving them have been made defendants in this suit, but they have not interpleaded by filing answer or statement of claim in this cause and have submitted no proofs in support of their claims. For want of presentation of statement and proofs in support of such claims they must be declared not to be entitled to any portion of the fund in court.

Objection is taken by the defendant Bolte, trustee in bankruptcy of the contractor, Goings, to the allowance of any claims which are based on stop notices served after September 27th, 1901, because it is claimed they are avoided by the operation of the United States Bankruptcy law.

This argument is based on the following theory: The stipulation of the parties admits that the building contracted to be built, the "Hotel Vallaire," was agreed to be completed on August 1st, 1901. The contract prescribed in these words how the last installment of the contract price shall be paid: "Balance in thirty days after the completion of this contract." It is admitted that the building was completed on August 1st, 1901. Thirty days after that time, namely, on August 31st, 1901, the balance of the contract price (which is the fund in court in this suit) became payable to the contractor. The defendant Bolte, trustee in bankruptcy of the contractor, Goings, while he admits that all claimants who served stop notices on the owner

before August 31st, 1901, have perfected their liens (*Slinger-land* v. *Binns, 56 N. J. Eq. (11 Dick.) 415*), insists that all the stop notices which were served after that date created no lien on the contract price (*Kreulz* v. *Cramer, 64 N. J. Eq. (19 Dick.) 648*) and operated merely as assignments *pro tanto* of the portion of that price remaining in the hands of the owner (*Anderson* v. *Huff, 49 N. J. Eq. (4 Dick.) 349*) ; that such assignments are voidable within the operation of section 67 of the United States Bankrupt law (*U. S. Bankruptcy act, 1898*) when made within four months prior to the filing of the petition against the bankrupt; that it is an admitted fact in this cause that Goings, the contractor, was adjudicated a bankrupt on January 27th, 1902, by the United States district court of the district of New Jersey. The defendant trustee in bankruptcy therefore insists that all claims depending on stop notices served subsequently to September 27th, 1901 (which was four months prior to the filing of Goings' petition in bankruptcy), must be declared void, and that the moneys which would have been paid to such noticing claimants if their claims had been valid, must be paid to the trustee in bankruptcy of Goings, the contractor, as part of the assets of the bankrupt's estate.

It will be found, I think, upon examination that the assignments which are invalidated by the Bankrupt act are transfers of his property, "made or given by the person adjudged a bankrupt." This appears in the express words of the Bankrupt act (section 67, paragraph 2). It plainly means to affect only such assignments or dispositions of his estate as the bankrupt himself may voluntarily make, for by the express words of the Bankrupt act it is applicable only to such assignments as the bankrupt may make "with intent and purpose on his part to hinder, delay or defraud his creditors," &c.

The stop noticing claimant, under section 3 of the Mechanics' Lien law, acts without any procurement, permission or action of the contractor, the bankrupt. The right or opportunity to serve the stop notice on the owner and thus compel the retention of the contract price from the contractor (the bankrupt) is conferred not by the contractor but by the law. It may be, and

generally is, exercised against the wishes and intent of the contractor. He is powerless to create, limit or control the right of the workman or materialman who serves a stop notice.

Although the word "assignment" is used in our decisions to define the effect of the service of the stop notice on the owner upon the contract price, the transaction is not in truth an "assignment" in the sense that the contractor, who is entitled to the contract price, transfers the portion of it affected by the stop notice. This plainly appears in the discussion of the operation of these stop notices in the case of *Wightman* v. *Brennan, 26 N. J. Eq. (11 C. E. Gr.) 491,* where Vice-Chancellor Van Fleet used the following language :

"It is insisted by the demurrants that the effect of the notice is limited to the creation or raising of a right of action, and does not transfer any right of the contractor or give the workman or materialman any right whatever to the debt due from the owner to the contractor. This view is manifestly unsound. It can only be supported on the theory that it was the legislative design to make one man pay another's debts. No such purpose can be imputed to the law. On the contrary, I think the purpose most conspicuously expressed on its face is to work a substitution or subrogation of creditor rights; in other words, to put the workman or materialman, whenever the condition of affairs contemplated by the statute exists, exactly in the position of the contractor, so that he can invoke not only the contractor's remedy, but also his rights, against the owner. This is the effect imputed to the notice by the supreme court in *Reeve* v. *Elmendorf.* The chief-justice, speaking for the court, says: 'Upon notice given, the workman or materialman, to the extent of his demand, takes the place of the contractor.' A payment by the owner to a workman or materialman, pursuant to notice, is a payment to the contractor. It has that effect in spite of the will of the contractor. My judgment, therefore, is that the notice, by force of the statute, works an assignment *pro tanto* of the debt due to the contractor. This is the effect given to it under the New York statute. *Rudd* v. *Davis, 1 Hill 278; Collins* v. *Ellis, 21 Wend. 404.*"

25

The right to have the transfer of the portion of the contract price noticed to be retained is given, not by the contractor, but by the law. In consideration of the existence of that right, the workmen and materialmen have accredited the contractor and enabled him to increase his assets by performing his contract. If he becomes a bankrupt after that right has been exercised, neither the letter nor the spirit of the Bankrupt act includes, among those preferences which may be vacated, as made within four months next before the filing of the petition, the interest which the stop-noticing claimant has acquired in the contract price by serving his stop notice under section 3 of the Mechanics' Lien law. *In re Emslie, 102 Fed. Rep. 292.*

Neither is the service of a stop notice, under section 3 of our Lien act, a "legal proceeding," under the meaning of the Bankrupt act, in section 67, paragraph *f,* which makes voidable all liens obtained through "legal proceedings." In the *Emslie Case,* Judge Wallace defined "legal proceedings," referred to by the Bankrupt act, to be a "proceeding in a court of justice by which a party pursues a remedy which the law affords him."

In my view, the objection that the United States Bankrupt law invalidates those claims which are based upon stop notices served after September 27th, 1901, on the ground that they are assignments within the operation of that law, cannot be sustained.

The fund in court should be paid out to the noticing claimants, as above indicated, with their costs of this suit to be allowed. If anything remains thereafter, it should be paid to the defendant Bolte, trustee in bankruptcy of Goings, the contractor.

A decree will be advised accordingly.