# CHARLESTON.

## MARY E. JONES *v.* SIMON HEBDO.

Submitted April 5, 1921.     Decided April 12, 1921.

1. APPEAL AND ERROR—*Courts Discretion as to Examination of Witnesses Will Not be Reversed Except for Abuse.*

   A trial court has wide latitude in the conduct of a trial, and particularly in matters pertaining to the examination of witnesses, and its rulings in relation thereto will not be reversed except when there has been a plain abuse of its discretion.   (p. 391).

2. TRIAL—*Refusal to Admit Evidence After Conclusion of Introduction of Evidence to Admit Contradictory or Cumulative Testimony Not An Abuse of Discretion.*

   And when the evidence in chief and in rebuttal have been concluded on both sides and the case is about to be submitted to the jury, the refusal of the court to open up the evidence to admit the testimony of other witnesses known but not summoned and whose evidence is but contradictory or cumulative

of some other evidence will not ordinarily constitute abuse of the court's discretion or reversible error.   (p. 391).

3.   FALSE IMPRISONMENT—*Not Excessive Damages.*

Where in an action for damages for assault and unlawful arrest and imprisonment the evidence shows that defendant falsely and without any grounds whatsoever swore out a warrant charging plaintiff with a heinous crime, and while in transit from this state to a distant state accompanied by her daughter causes her to be arrested in the night-time, taken from the train on which she is traveling and conducted through the public streets of a city and before a magistrate and delayed from four to six hours, and then to be discharged by the magistrate without offering any evidence of the truth or falsity of his accusation, and her journey is thereby broken and she is greatly disturbed in mind and body, a verdict of $2,725.00 will not be set aside as excessive and unwarranted by the evidence.   (p. 393).

4.   SAME—*Mental Suffering Ground for Compensatory and Punitive Damages.*

In such case mental pain and suffering and the insult, indignity and humiliation inflicted upon plaintiff by the wrongful and unlawful act of the defendant constitute just bases for compensatory damages, to which, if the jury believe from the evidence the sum found therefor is not sufficient to punish the defendant for his wrongful and unlawful conduct, the jury in their discretion may add such additional sum as will constitute sufficient punishment therefor.   (p. 394).

Error to Circuit Court, Wood County.

Action by Mary E. Jones against Simon Hebdo.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Chas. J. Schuck, R. E. Bills* and *C. M. Hanna,* for plaintiff in error.

*Fred L. Shinn* and *James S. Wade,* for defendant in error.

MILLER, JUDGE:

In an action by plaintiff against defendant for assault, false arrest and imprisonment, and for damages sustained because of the alleged injuries, she obtained a verdict and judgment for $2,725.00, which judgment defendant would have us reverse on the present writ of error.

The declaration is in two counts. The first charges that the defendant with force and arms, on July 6, 1918, in the city of Parkersburg, in Wood County, assaulted plaintiff, and then and there wrongfully siezed and laid hold of her, and then and there wrongfully and against her will forced her to go from and out of a railway train of the Baltimore and Ohio Railroad Company, then standing at the Sixth Street station in said city, and upon which she was then and there lawfully being conveyed as a passenger from the city of Clarksburg in said state to the city of St. Louis in the state of Missouri, to a certain police station in said city of Parkersburg, and then and there in said police station wrongfully imprisoned her by force and against her will, without any reasonable or probable cause therefor, for the space of about four hours, and there wrongfully forced and compelled her to go from said police station to and along divers public streets in said city of Parkersburg to the office of a certain justice of the peace therein situated, and then and there wrongfully kept and detained her by force and against her will, without any reasonable or probable cause, for the space of two hours then following, where she was discharged from custody by said justice upon the motion of defendant without any trial being had, contrary to the law of the State of West Virginia, and whereby she was not only greatly hurt, mortified and outraged, but also greatly injured in her credit, standing and good name, and suffered greatly therefrom in both body and mind, to her damage $10,000.00.

By the second count it is charged that while so in said train lawfully as alleged in the first count and en route from said city of Clarksburg to the town of Eldorado, Kansas, about the hour of 3:30 A. M. of the said day, defendant and divers other persons to plaintiff unknown, but who were then and there under the direction and control of defendant, entered the coach of said train in which she was so riding as a passenger, and with force and arms, without any probable cause therefor, and without any right or authority of law therefor, and without any justification or excuse therefor, and against her will and in utter disregard of and in viola-

tion of her constitutional right of personal liberty, unlaw-
fully and maliciously did arrest her and by force remove her
from said coach against her will, and detained and imprison-
ed her, and did unlawfully and maliciously and without
probable cause or right or authority of law cause her to be
imprisoned and detained against her will in said police
station for the period of four hours, and therefore and as
alleged in the first count, caused her to go along the public
streets of said city of Parkersburg in the custody of divers
persons, then under the control and direction and orders of
defendant, to the office of a certain justice of the peace lo-
cated in said city of Parkersburg, who did then and there
further detain her against her will unlawfully and malicious-
ly and without right or authority of law for a long space of
time, to-wit, for the space of two hours, when she was dis-
charged from the custody of said justice, on motion of de-
fendant by his attorney, without any trial being  had, by
reason of which she was detained and imprisoned and was
greatly humiliated and embarrassed, and was greatly injured
in her good name, fame, credit and reputation, and by rea-
son of which she was detained in her journey to join her hus-
band, and was compelled to remain over in the city of Park-
ersburg until she could arrange for her transportation on a
later train, and by reason of which delay she was required
to pay and did pay out large sums of money for her board
and for railroad transportation, and divers other sums for
counsel fees and court expenses and other charges growing
out of her arrest, detention and unlawful imprisonment,
and was otherwise greatly injured and damaged, in the sum
of $10,000.00.

On the trial, on the issue joined on the plea of not guilty,
the jury found on evidence which justified them in so find-
ing, that plaintiff was arrested and taken off the train on a
warrant sworn out by the defendant before said justice
charging her with the offense of being then engaged in trans-
porting out of this state to the state of Missouri her daughter,
then a girl of about seventeen years of age, and who had re-
cently become the wife of one James Joseph, a nephew of the
defendant, for the purpose of prostitution or other immoral

purposes; that said charge was false and unfounded; that defendant was present at the time and delivered the warrant to a policeman, one Yoho, and directed him to go upon the train and serve the warrant, which called for the arrest of the plaintiff and her daughter, and to take them off the train; that Hebdo accompanied the policeman and the prisoners to the police station, where both were turned over to the desk clerk, one O'Neal; and that plaintiff was left in the police station and her daughter taken by Yoho the policeman and delivered to the jailor of the county, and the daughter detained there until the next morning, when she and her mother, the latter having demanded a trial, were taken before the justice, and the plaintiff discharged without trial, on the motion of Hebdo or his attorney; that the swearing out of the warrant falsely accusing plaintiff of a grave offense was a scheme or plan of defendant  or his advisors to aid his nephew Joseph to capture plaintiff's daughter, who had foolishly married him a short time before, and who soon afterwards went with him to Wheeling, where he practically abandoned her, going into the army and making no provisions for her, but left her to shift for herself, and she finally was obliged to return to her father and mother.

Some effort was made on the trial to disconnect defendant with the warrant, and he and his nephew swear that he was not present at the justice's office or at the train where the warrant was executed, and that the nephew, not Hebdo, obtained the warrant.    But the transcript of the justice and the testimony of the officer who made the arrest, as well as the evidence of plaintiff and her daughter and others, show clearly that both were at least mistaken.    The policeman who executed the warrant swears that Hebdo gave him the warrant at the train and directed him what to do with it; that he followed Hebdo's instruction and arrested    both plaintiff and her daughter; that after getting them both off the train Hebdo may have said to plaintiff she might go on, as the train started; but that the warrant called for both, and he said she could not go, and they took both to the police station and there turned them over to the desk clerk, and

afterwards took the daughter to the jail and delivered her to the turnkey.

We have recited so much of the pleadings and evidence to show the application of the points of error relied on.     The first is that the court erred in refusing to allow defendant to examine as a witness C. E. Boice after the parties had introduced their evidence in chief and in rebuttal, but before the jury had retired, the court ruling it out on the ground that the offer came too late and after the evidence in the case had been closed on both sides.     According to the proffer then made defendant proposed to prove by the witness that Boice was with Yoho at the time that Mrs. Jones and her daughter Mrs. Joseph left the train at Parkersburg, and that both left the train of their own accord, neither being arrested, and that when Mrs. Joseph found her husband at the station platform she left the train and her mother followed her, and that Mrs. Jones was never placed under arrest. The bill of exception shows that defendant had never had this witness summoned, although it recites he had been duly summoned, it is likely meant that he had been summoned by the other party.

Two grounds are relied on by plaintiff's counsel to sustain the ruling of the court:     First, the lack of diligence on the part of defendant in procuring the presence of the witness before the close of the evidence; Second, that the evidence of the witness as proffered was merely cumulative of other evidence on the same subject.

That defendant was wanting in proper effort to obtain the witness seems manifest.     He must have known that Boice was present at the time of the alleged arrest, and it was his duty to look him up and obtain his presence.     Our decisions say that the court has wide latitude in matters pertaining to the examination of witnesses, and the rulings of the trial court will not be reversed unless there has been a plain violation of its discretion.     *Tully* v. *Despard,* 31 W. Va. 370, where the rule was applied in a case where counsel had omitted to request certain instructions after the jury had been directed to retire.     *Dowler* v. *Gas Company,* 71 W. Va. 417, where the rule was applied on the recalling of a witness

to give further evidence.    *Burns et al.* v. *Morrison,* 36 W.
Va. 423, where the rule of wide discretion in the trial court
was applied without reversible error in allowing the with-
drawal of a joinder in the demurrer to the evidence.    The
record does not here present a case of an omission to pro-
duce evidence under a misapprehension of law calling for the
opening of the case and receipt of additional or other evi-
dence such as was presented in *Cook* v. *Raleigh Lumber Co.,*
74 W. Va. 503, cited and relied on by defendant's counsel.
The case here is one of pure neglect to produce a witness in
time to give evidence on facts testified to by other witnesses
on a vital issue in the case, of which defendant must be pre-
sumed to have had knowledge.    And citing the cases already
referred to, we said in *Daniels* v. *Thacker Fuel Co.,* 79 W.
Va. 255, applying the same rule, that in matters pertaining
to the conduct of the trial, including joinder and withdrawal
of demurrers to evidence, we will not reverse such discretion-
ary action unless the same has been exercised in a manner
plainly arbitrary or otherwise    obviously improper.    In
*Webb* v. *Ritter,* 60 W. Va. 193, we held, in accordance with
the cases cited, that we would not disturb a verdict and
judgment because of the refusal of the trial court to admit
evidence offered after the conclusion of the introduction of
evidence of both plaintiff and defendant, unless it appears
that the trial court in so doing  abuses its discretionary pow-
ers by refusing to allow the act in the furtherance of justice.
In the case at bar, where the warrant for the arrest of the
plaintiff and her daughter was sworn out by the defendant
and placed in the hands of the officer, and the officer swears
he executed the same by arresting the parties accused, and
they are both taken before the officer issuing the warrant and
dismissed in the manner admitted and shown in the record,
the evidence of Boice, if he had been allowed to testify as
proposed, could have had little if any weight with the jury.
Moreover, the ruling of the court was proper because the
proposed evidence was merely contradictory or cumulative of
other evidence already before the jury.    It introduced no
new facts.    Defendant undertook to prove by his witnesses
Joseph Hebdo, James Joseph, Samuel Plaine and P. E. Gay-

nor that Mrs. Jones was at no time under arrest, that both she and her daughter voluntarily got off the train, and that Mrs. Jones was told that she was not under arrest, etc. The jury did not believe these witnesses. It may be that after getting plaintiff off the train by means of the warrant of arrest and arresting her as the officer says he did, defendant and his co-workers would have been glad to get rid of her; but that is not material, and the jury were not convinced that she was not arrested as she and the other witnesses say she was. We can not see that the court abused the discretion which it was entitled to exercise on the trial and that its ruling on the proposed evidence of Boice was erroneous.

The next ground of error is that the court should have sustained defendant's motion for a new trial: (a) because the verdict was contrary to the evidence; (b) because it was excessive; and (c) because of the refusal of the court to admit the evidence of the witness Boice, the question just disposed of.

That defendant was unlawfully arrested there can be no doubt. The evidence on the question is overwhelmingly in plaintiff's favor. Indeed there was no attempt to justify her arrest; the only attempt was to evade the fact of her arrest at the instance and on the motion of defendant. The jury has settled that question of fact against him.

The principal point of attack is upon the alleged excessiveness of the verdict. It is contended that as plaintiff offered no evidence of the amount of expenses incurred or money paid out for board, railroad transportation, counsel fees, court costs, etc., nor of damages sustained by the delay, the damages awarded by the jury must be regarded as mainly punitive or vindictive, in an amount not justified by the evidence, and so evidencing partiality and prejudice against the defendant on account of nationality or some other cause not justified in law. But plaintiff was necessarily outraged and distressed in body and mind by the false charges and the manner in which she was arrested. The purpose of capturing her daughter was no justification for the outrage committed upon her.

What elements are proper to be considered in estimating

compensatory damages as distinguished from punitive or vindictive damages in such cases? According to our holdings compensatory damages include allowance for mental anguish and pain and suffering in addition to mere pecuniary loss when accompanied by injury from assault, indignity or injury to reputation, etc. *Davis* v. *Telegraph Co.,* 46 W. Va. 48, 53; *Johnson* v. *N. & W. Ry. Co.,* 82 W. Va. 692; *Hess* v. *Marinari,* 81 W. Va. 500, 503. Here the jury were not required by any instruction or otherwise to separate the compensatory from the vindictive or punitive damages, if any, included in their verdict, as was the case in *Pendleton* v. *N. & W. Ry. Co.,* 82 W. Va. 270. So that we have to determine whether the evidence justifies the amount of the verdict on the theory of compensatory and punitive damages which may have been found by the jury. In cases like this damages assessed for mental pain and suffering, for insult, indignity and humiliation inflicted, resulting from the wrongful and unlawful act of the defendant, constitute the bases for compensatory damages and if these in the judgment of the jury be not sufficient for adequate punishment, the jury are then allowed to add a sufficient sum properly proportionate to the actual or compensatory damages as in their judgment will constitute sufficient punishment to act as a deterrent to wrongdoers. The amount of such damages being in their nature indeterminate, are peculiarly within the province of the jury, and their verdict will not ordinarily be disturbed unless so small or so gross as to evidence partiality, prejudice or misconduct. *Burdette* v. *Goldenburg,* 87 W. Va. 32, 104 S. E. 270; *Gibbard* v. *Evans,* 87 W. Va. 650, 106 S. E. 37.

The amount of the verdict in this case no doubt seems large, but can it properly be set aside under the rules of practice obtaining in this state? Defendant made groundless charges against plaintiff, caused her to be arrested thereon and to be taken in the nighttime from a railway train to a police station, her journey broken, and to be detained unlawfully. This was a wilful and wanton act on his part, and in total disregard of her lawful rights. For all of this she was entitled to adequate compensation, and if this was

not sufficient to adequately punish him, to such additional damages as will furnish such punishment.   *Pendleton* v. *N. & W. Ry. Co., supra,* 270, 276.

On the question of the amount of the verdict defendant cites and relies on *Ogg* v. *Murdock,* 25 W. Va. 139, a case involving an attachment in a civil suit for debt, the court holding that defendant was justified in believing plaintiff was about to leave the state without paying his debt, but was mistaken, no malice or intentional wrong being intended. There a verdict of $475.00 was set aside for the reason indicated.   In the case of *Johnson* v. *Railway Co., supra,* a verdict of $1,000.00 was sustained, where there was controversy whether the plaintiff was in fact arrested or detained, and where no indignity or humiliation of consequence was inflicted upon her.   She was accused by the agent of the railway company of having in her possession in a suit case shipped as baggage intoxicating liquors.   In *Turk* v. *N. & W. Ry. Co.,* 75 W. Va. 623, we sustained a judgment on a verdict in a similar case for $500.00 compensatory damages and $1,000.00 punitive damages.   In this case the evidence warrants the conclusion that defendant's action was wanton and wilful, if not malicious.   In 11 R. C. L. 821, § 36, it is said: "If the wrong was done maliciously or wantonly, vindictive damages are recoverable, and as to these the extent of the jury's discretion is even wider than in the case of compensatory damages.   Malice, as used in this connection, does not necessarily mean anger, or a malevolent or vindictive feeling toward plaintiff; but a wrongful act without reasonable excuse is malicious within the legal meaning of the term."   No doubt the jury in this case, as expressed by their verdict, were influenced by the utter want of justification for the arrest and detention of plaintiff.   One of the officers required to make the arrest said, that when asked what the plaintiff had done Hebdo said, "Nothing."   The financial circumstances of defendant are not shown, and it does not clearly appear just what amount would be necessary to properly punish him for his wrong.   It does appear that he was a merchant of some sort in Parkersburg, probably engaged in the business of confectioner and fruit deal-

er.    But following the rules governing in cases of this kind, we are not disposed to reverse the judgment on account of the magnitude of the verdict.    It will therefore be affirmed.

*Affirmed.*