# CHARLESTON.

BAILEY LUMBER COMPANY *v.* GENERAL CONSTRUCTION COM-
PANY *et al., Defendants Below,*
COVEL SMOKELESS COAL COMPANY, *Appellant*

(No. 5439)

Submitted April 27, 1926.     Decided May 4, 1926.

1. NOTICE—*Where Statute Directs That Notice in Writing Shall
be Given But Prescribes no Method of Service, it is Ordi-
narily Sufficient to Show That Party to be Notified Actually
Received Written Notice, and Method is Unimportant.*

   Where a statute directs that a notice in writing shall be
given, but prescribes no method of service, it is ordinarily
sufficient to show that the party to be noticed actually re-
ceived the written notice. The means or method by which he
actually received it are unimportant.  (p. 571.)
   (Mechanics Liens, 40 C. J. § 198; Notice, 29 Cyc. 1119.)

2. MECHANICS' LIENS—*Materialman, to Preserve Lien for Ma-
terials Not Paid for by Contractor, Must Serve Proper
Notice on Owner That He Claims Lien Within 60 Days
After Ceasing to Furnish Materials and Within 90 Days
Thereafter Cause to be Recorded in Office of County Clerk
Notice of Lien, Which, if in Form or Effect as That Served,
is Sufficient (Code, c. 75, § 3).*

   Under Sec. 3, Chap. 75, Code, a materialman in order to
preserve his lien on property for materials furnished a con-
tractor and not paid for by him, must serve proper notice
upon the owner that he claims a lien on the property, within
sixty days after he ceased to furnish the materials; and
within ninety days thereafter cause to be recorded in the

county clerk's office a notice of his lien, which if in form or effect as that served, shall be sufficient.   (p. 571.)

(Mechanics Liens, 40 C. J. §§ 188, 228.)

3. SAME—*When County Clerk Has Received and Admitted to Record Notice That Lien is Claimed on Property, Material-man Has no Duty to Cause it to be Spread on Record by Court Proceeding or Otherwise; as Between Owner and Materialman There is Substantial Compliance with Statute by Latter When County Clerk Has Received and Admitted to Record Legal Notice of Claim of Lien Within 90 Days From Performance of Last Work and Labor or Furnish-ing Materials (Code, c. 75, § 3, subd. e, sections 6, 15, and chapter 121 § 1).*

It is the duty of the county clerk to enter every such notice in the mechanic's lien record.   And when the clerk has re-ceived and admitted to record such notice, it is not the duty of the materialman to cause it to be spread upon the record by court proceeding or otherwise.   And, as between the owner and materialman, there is a substantial compliance with the statute on the part of the latter when the clerk has received and admitted to record such legal notice within ninety days. (p. 575.)

(Mechanics Liens, 40 C. J. § 215.)

4. SAME—Point 3 of syllabus in *Augir* v. *Warder*, 68 W. Va. 752, approved and applied.   (p. 578.)

HATCHER, JUDGE, absent.

(Mechanics Liens, 40 C. J. § 740.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Wyoming County.

Suit by the Bailey Lumber Company against the General Construction Company and others to enforce a materialman's lien.   Judgment for the plaintiff, rendering a personal decree against defendant Covel Smokeless Coal Company, and the last-named defendant appeals.

*Reversed and remanded.*

*McGinnis & McGinnis,* and *Price, Smith & Spilman,* for appellant.

*George Richardson, Jr.,* and *Sanders, Crockett, Fox & Sanders,* for appellee.

LIVELY, JUDGE:

The decree complained of enforces a materialman's lien in favor of the Lumber Company (plaintiff below) against the Coal Company (defendant below, appellant here) by rendering a personal decree against the Coal Company and ordering a sale of its property unless sooner paid.

The issue involved is the validity of the lien. Defects in the notice of lien and its recordation are claimed by the Coal Company, which invalidate the lien; and the Coal Company further claims it and its property were released from responsibility and lien because it required by notice in writing the Lumber Company to file with it, the owner, an itemized list of the materials furnished the contractor, the dates, prices charged and nature of the materials furnished, as provided in Sec. 6, Chap. 75, Code 1923, which requirement was ignored by the Lumber Company. Another defense is that not all of the materials furnished by the Lumber Company and listed in its notice of lien were in fact used on the Coal Company's property, but were used by the contractor in construction elsewhere; value of which materials used elsewhere is in the approximate sum of four or five thousand dollars.

, It appears that the Coal Company having a coal lease on 79.29 acres, desired to build houses thereon for mining purposes, and on May 1, 1923, contracted in writing with the General Construction Company, a corporation, to build the houses. The contractor began the work and continued in the erection of the houses until about December 1, 1923, when it ceased work, leaving it unfinished, and the Coal Company completed the work after that date and ·paid the contractor all that was due him. The contractor purchased materials from the Lumber Company, alleged by the latter to amount to $51,425.33, on which it had paid $27,007.04, leaving a balance which with interest amounted to $25,009.21, for which it claims its lien, notice of which was served on the Coal Company, and on Gulf Smokeless Coal Company, December 18, · 1923, and filed for record with the Clerk of the County Court of Wyoming County on December 14, 1923. About the middle

of September, the Coal Company through W. P. Tams, Jr., its president, inquired of the Lumber Company by letter to Bluefield, where it conducted its business, how the construction company was paying its bills, to which the Lumber Company promptly replied that it was paying its bills after a slight delay and that they thought there was nothing to fear, and acknowledged the interest of the Coal Company in the matter, as it, the Coal Company, would be liable for mechanic's lien. On September 22, 1923, Tams as president wrote a letter to the Lumber Company asking for itemized statement of materials furnished General Construction Company for work at Covel (where the houses were being constructed), the dates, prices, and nature of the materials. This letter was sent to Beckley by mistake and was returned to the writer. In the meantime Tams had gone to Baltimore, and some one in his office wrote a similar letter dated October 15, 1923, which he forwarded to Tams at Baltimore who received, signed and returned by mail to the office at Tams, thence it was mailed to the Lumber Company, and in due course of mail should have been received by it about October 23. That letter reads:

"Oct. 15/1923.

Bailey Lumber Company,
   Bluefield, W. Va.
Gentlemen:
   On Sept. 22nd we wrote you a letter requesting certain information concerning General Construction Company's account with you. Today this letter was returned to us on account of it having been mis-directed.
   We desire you to furnish us an itemized statement of the material furnished to the General Construction Company by your company for work at Covel; the dates upon which such materials were furnished, and the price charged therefor by you against the General Construction Company; and the exact grades and nature of such material.
         Yours very truly,
                           President."

No reply was made. About December 3rd following, Cheney, the general manager of the Lumber Company, acknowledged

to McWhorter, superintendent of the Coal Company and to Rupe, an employee, that he had received the letter about thirty days before that time, and had delayed reply until he could check up credits with the construction company's manager. There can be little doubt that the Lumber Company received the letter in due course of mail. It was in their files and was not produced on the trial, because it had been lost or misplaced.

The Coal Company says the failure of the Lumber Company to comply with the request in the letter mentioned above releases it from all responsibility and its property from all lien or charge for materials furnished the contractor, under Sec. 6, Chap. 75 Code, which says: ''The said owner may, at any time, by notice in writing, require . . . such materialman . . . to file with said owner an itemized account of the . . . materials . . . furnished by said materialman . . . to show the dates upon which . . . said materials were furnished, the price charged therefor and the nature of such . . . materials, and the neglect or failure . . . so to file said itemized statement with the said owner, within ten days after the receipt by him of said written notice so to do, shall release the said owner from all responsibility and his property from all lien or charge . . . for all materials furnished by the person so failing to file such required itemized statement, prior to the giving of said notice.''

On the other hand, the Lumber Company says this letter is not the notice contemplated by the statute, was not served on it, but sent to it through the mails, and is not sufficient on its face to show that Covel Smokeless Coal Company, the owner of the property, required such itemized statement. It is argued that the notice should be served by an officer to be effective; that such was the intention of the statute.

The statute does not state how the notice shall be given. It does not say that it shall be served. It simply says that the owner by notice in writing may require the itemized statement from the materialman, and provides that if he fails or neglects to file such statement within ten days after

the *receipt* of the notice (not after it has been *served*), the owner is released from any lien for material furnished the contractor prior to the *giving* (not *serving*) of such notice. Where the statute is silent as to the manner or method of giving notice it is generally sufficient if actual notice has been received by the person affected. *Brost* v. *Whitall-Tatum Co.,* 99 Atl. (N. J.) 315. Our statute says that if a notice is to be given no particular mode of *serving* being prescribed, it may be served by delivering a copy thereof to the party in person. Sec. 1, Chap. 121, Code. We do not think it could be successfully contended that the Lumber Company would have been relieved from furnishing the statement if some credible person had handed this letter to its manager, Cheney, and had made oath to that fact. It would have been more solemn and impressive if an officer high in authority had done so, but the substance of the paper would not have been affected. The materialman in perfecting his lien is required by the statute to give to the owner the notice of his lien *by any of the methods provided by law for the service of legal notices or summons.* Sec. 3, par. e, Chap. 75, Code. But the statute does not require in terms such particularity of giving the notice under consideration. It does not contemplate such particularity where the owner calls upon the materialman to give him data by which he can protect himself in settling with the contractor. One business man calls upon another to furnish him information which that other is required to furnish within a certain time, and the purpose of which he knows, and the statute does not contemplate the employment of counsel for the preparation of a formal paper with service by an officer. No form of such notice is prescribed.

In *Blanchard* v. *Ely,* 179 Mass. 586, the statute for the enforcement of the lien required the lienor to demand in writing payment, said writing to be ''delivered to the debtor or left at his usual place of abode, if within this Commonwealth, or made by letter addressed to him at his usual place of abode without the Commonwealth and deposited in the post-office to be sent to him.'' The defendant lived in the Commonwealth, at Springfield. The lien which plaintiff

claimed and sought to enforce was for keeping certain horses. The demand required by the statute was made by letter and received by him next morning. The lien debtor made defense that there was no demand as required by the statute, that the demand should have been made by formal service like that of a writ in a court action (an argument advanced in the case at bar). The court said that the statute made no such requirement and that delivery by the postal authorities was as good as if made by another person to whom it might have been entrusted, and that where no particular method of delivery is required, it is sufficient to prove that demand or notice was in fact conveyed to the person to be affected thereby, citing *Wilson* v. *Trenton*, 16 L. R. A. 200; *Burdette* v. *Lewis*, 7 C. B. (N. S.) 791; *Shoemaker* v. *Mechanics Bank*, 59 Pa. St. 79; and *Walters* v. *Brown*, 15 Md. 285, 292.

In *Fehling* v. *Goings et al.*, 67 N. J. Eq. 375, 58 Atl. 642, the statute required the materialman to give notice in writing to the owner that the contractor had not paid, in order to hold the owner for the debt. These notices were called ''stop'' notices. They stopped the owner from paying the contractor, when the latter had not paid the materialman. The statute prescribed no method or by whom the notice should be served. The court held: ''Such notices may be efficiently served in any form or by any method which in effect gives the written notice prescribed by the statute.''

And in *Brost* v. *Whitall-Tatum Co.*, 99 Atl. (N. J.) 315, it was held that, ''Where a statute provides for the giving of a notice, but does not prescribe the manner of its service, it is sufficient if actual notice to the person to be affected is conveyed to him.''

The fact that the materialman has actually received a notice in writing requiring him to file with the owner the itemized statement, could not be any more a fact, if served by an officer. Even in court proceedings the writs emanating therefrom may be served by any credible person as well as by an officer. We are of the opinion that the notice in writing delivered to the Lumber Company's general manager through the mail, was a sufficient delivery and service under

the statute. The delivery to Cheney, the agent of the Company and in active and general charge of its affairs, was delivery of the notice to the Lumber Company.

The contents of the letter are said to be insufficient because the Covel Smokeless Coal Company is not named therein. This criticism has some merit, and the letter standing alone without the other facts shown would likely make it bad. But a few days before it was written another letter had been written by Tams, President (the same person who wrote the latter), and received, asking about the indebtedness of the construction company for materials furnished at Covel. The Lumber Company answered, saying that while the contractor was slow, there appeared to be no cause for alarm, and that it realized their interest in the matter, as they would be liable on mechanics' liens. It is manifest that the Lumber Company knew where its materials were shipped. Its salesman saw some of them delivered at Covel. And it is evident that the Lumber Company knew on what construction and to whom the materials were to be issued. Lemon, its salesman, says so. It does not claim that it was misled by the letter as to the identity of the owner. The only reason given for not furnishing the itemized statement asked for was that it was waiting for adjustment of credits with Shawver, the construction company's manager. See *Fry* v. *Bennett,* 7 Abb. Pr. (N. Y.) 352.

The neglect or failure of the Lumber Company to file with the Coal Company the itemized statement within ten days from the time of the receipt of the written notice so to do, releases the Coal Company's property from all lien in favor of the former for materials furnished the contractor prior to the time the notice was received. So says the statute.

It appears that materials were furnished the contractor after the letter requiring itemized statement was received, the amount of which is not clearly shown (the account filed with the notice of lien being omitted from the record), the last item for lumber having been received on November 27, 1923. Although the Lumber Company has lost its lien for materials furnished up to the time of the receipt of the letter asking

for the itemized statement, it is not precluded from asserting its lien for materials furnished after that time (the amount of which is not disclosed), if it has perfected its lien by giving proper notice, and causing its lien to be recorded. The Coal insists that no lien has been perfected for any material furnished at any time. It is claimed that the notice served is bad because the return shows it was served December 18, 1923, on Gulf Smokeless Coal Company and Covel Smokeless Coal Company, by delivery of copy to Tams, the attorney in fact for said "corporation". Tams was president and attorney in fact for both corporations. The Gulf Smokeless Coal Company owned all of the stock of the Covel Smokeless Coal Company. There is no merit in this contention. The fact that three corporations were named as owners and the notice directed to them, would not destroy the notice if, in fact (as it was), it was served on the true owner. *Concrete Company* v. *Realty Co.*, 90 W. Va. 762. The Coal Company could not have been misled. It had notice.

The main contention is that the Lumber Company did not cause to be recorded in the County Clerk's Office, notice of its lien, as required by Sec. 3, par. e, of Chap. 75, Code. This statute says that the lien shall be discharged and avoided unless within ninety days from the time the materialman ceased to furnish materials he shall cause to be recorded a notice of his lien, which notice shall be sufficient if in form and effect as that provided in paragraph b, and which said notice need not include the itemized account. The form of notice in paragraph b is very short, and is directed to the owner, notifying him that a lien is claimed to secure payment of a certain sum upon real property and the buildings thereon, describing each, and duly sworn to. On December 14, 1923, the Lumber Company filed with the county clerk a notice sufficient in form and substance, duly sworn to by the president of the company, on the back of which the clerk endorsed: "Received for record the 14th day of Dec. 1923. Recorded in Mechanics

Lien Docket p. 42.'' He thereupon entered in the mechanic's lien docket the following:

"Register of Mechanic's Liens, Page 42.

| 1923 | Parties Seeking to Enforce Lien | Parties Against Whom Lien is Enforced | Amount |
|------|------|------|------|
| Date of Filing Dec. 14 | Bailey Lumber Co. a Corporation | Morris . Smokeless Coal Co., Covel Smokeless Coal Co., and Gulf Smokeless Coal Co. | $25,009.01" |

Then follows a minute description of the lease, and the buildings thereon. This is the only record of the lien sought to be enforced.

By Sec. 15 of Chap. 75, Code, it is made the duty of the county clerk to enter every such notice of lien in a book called "Mechanic's Lien Record" properly indexed, so as to show the names of the parties, the amount and character of the claim, when filed, and the description of the property. The Coal Company's counsel say that the index must show the names of the parties, the amount and character of the claim, date of filing, and a description of the property; but that the notice itself with all its formal parts must be recorded in the Mechanic's Lien Record; while the Lumber Company says that the words following "indexed", separated by a comma, refer to the notice, and that it is these material parts of the notice only which the clerk is required to enter in the record. In our view of the statute we do not deem; it important for the purposes of this case to construe that section with reference to the duty of the clerk in spreading the notice on the record. The clerk received the notice for recordation and it was filed in his office. It is the same notice served on the Coal Company. The record entry contained the essential parts of that notice so far as the Coal Company was concerned. But reverting to paragraph (e) of Sec. 3, above referred to, we do not believe it was the intention of the law-

makers to require the person filing notice with the county clerk to stand by and see him record it, or take charge of the proper record and do the recording himself. It is argued that he should compel the clerk by mandamus or other proper court process to record the notice. No such cumbersome method was ever contemplated by the Legislature, nor would it be effective in many instances. Ordinarily when a recordable paper is presented to the clerk, received by him, filed and admitted to record, the duty of the person so filing is discharged. *Wagon Co.* v. *Hutton,* 53 W. Va. 154. We construe the words ''cause to be recorded'' as meaning that a proper notice must be filed with the clerk whose duty it is to record it. Sec. 15 makes it the clerk's duty in specific terms. A divided duty cannot be logically inferred. M̤ust court process be invoked to compel the clerk to perform his duty? That remedy would be ineffective if the notice was presented and filed near the end of the ninety days, which is the rule and not the exception. Liens of this character are usually taken as a last resort.

Some of the courts say that mechanic's lien laws should be strictly construed; while others say they should be liberally construed. The better view is given in *Cary Hardware Co.* v. *McCarty,* 10 Colo. App. 200, to the effect that whether a particular case is within the statute a strict construction should be applied; but where it appears from the case that there is a clear right to the lien under the statute and the controversy is whether the lienor has properly proceeded to establish his lien, a liberal construction should be applied. A substantial compliance with the statute is all that is necessary in this State. *Construction Co.* v. *Hotel Co.,* 99 W. Va. 5, and cases cited.

It is quite generally held that if the notice is properly made out and filed for record with the proper recording officer, it will be good as between the parties, although the officer fails to spread it on the record according to law. *Wilson* v. *Logue,* 131 Ind. 191; *Wilson* v. *Hopkins,* 51 Ind. 231; *Goodman* v. *Baerlocher,* 88 Wis. 287; *Irish* v. *Harvey,* 44 Pa. St. 76; *Hurley* v. *Tucker,* 128 App. Div. N. Y. Sup. Ct. 580; 27 Cyc.

133. Reliance upon the proposition that unless the notice is actually recorded no lien can be perfected is placed by appellant, the Coal Company, on *Jones* v. *Kern,* 28 S. E. (Ga.) 850, and *Dodge* v. *Walsham,* 16 R. I. 704. These cases support that proposition. They construe the statutes under which rendered, strictly and according to the letter rather than the spirit. While they are persuasive, they do not control. Our case of *Biddle* v. *Concrete Co.,* 90 W. Va. 760, has little weight upon the question here involved.

Another ground of error is that the Lumber Company did not show that the materials furnished the contractor were used in the construction of the houses. There is abundant evidence on which the trial court could find that nearly, if not quite all, the material was delivered on the premises and used in the buildings. The evidence is conflicting as to some particular items. We note that the amount fixed by the decree is less by $1,682.42 than the amount sued for. Whether this deduction was on account of credits claimed by the contractor, or because the court found that some of the material was not used in the buildings, does not appear. As the cause must be remanded for the purpose of ascertaining the amount of material sold and delivered to the contractor for the buildings, subsequent to the receipt of the notice requiring the itemized statement by the Lumber Company, in order to fix the sum, if any, to which plaintiff is entitled under its lien, we will not review the conflicting evidence as to any particular item of material involved.

It was error to render a personal money decree against the Coal Company. *Augir* v. *Warder,* 68 W. Va. 752.

The decree will be reversed and the cause remanded.

*Reversed and remanded.*