CARROLL M. EARP, *DBA*

EARP CONSTRUCTION COMPANY

*v.*

SELWYN VANDERPOOL

*and* LILA L. VANDERPOOL

(No. 13628)

Decided December 21, 1976

Rehearing Denied March 11, 1977.

114

*Menis E. Ketchum* for appellants.

*Marshall & St. Clair, James W. St. Clair* for appellee.

FLOWERS, JUSTICE:

This is an appeal from a judgment of the Circuit Court of Wayne County entered in a civil action instituted by Carroll M. Earp, doing business as Earp Construction Company, as the plaintiff, against Selwyn and Lila L. Vanderpool, as defendants, to enforce a mechanic's lien. The lien was based upon work performed by the plaintiff for the defendants in developing a tract of real estate for use as a subdivision. The Vanderpools defended the action upon the grounds that the plaintiff's work had been performed in an unauthorized and unworkmanlike manner and at an unreasonable cost. By counterclaim, the defendants sought damages for breach of contract.

The trial court entered judgment upon a jury verdict of $17,813.47 for the plaintiff and against the defendants. Upon the denial of a motion for a new trial, the defendants prosecuted this appeal.

The issues raised by the appellants encompass the sufficiency of the description of improvements in the notice of mechanic's lien and the propriety of the trial court's refusal to instruct the jury upon the basis of the defendants' counterclaim and defense. Other errors relate to the trial court's refusal to admit certain evidence and its interrogation of a defense witness.

The appellants, Selwyn and Lila L. Vanderpool, are the owners of a certain parcel of real estate in Wayne County which they attempted to develop as a subdivision called "Vanderpool Gardens." An apartment building and two homes were constructed on the appellants' property. Thereafter, the Vanderpools decided to alter their subdivision to provide for a mobile home area.

After discharging another contractor, the appellants entered into an oral contract with the plaintiff to perform the necessary work. The terms of the oral agreement were discussed at a meeting attended by Earp, Selwyn Vanderpool and Floyd Stark, vice president of the banking institution which financed the venture.

The evidence is in conflict regarding the specific work and price agreed upon by the parties. Admittedly, Earp agreed to level and gravel the roads and streets, install culverts and a sandtrap for the septic system, seed and fertilize the entire property, and fill a certain area for use as a park. Earp refuted the testimony of Selwyn Vanderpool to the effect that he had agreed to take up and replace certain sewer and water pipes which had been defectively installed by the prior contractor.

Earp testified that he estimated the cost of the project at $27,000 to $30,000. Stark, the bank official, stated that the estimate was between $20,000 and $30,000, and Vanderpool asserted the estimate to be between $20,000 and

$25,000. Irrespective of the estimate, however, Stark and Vanderpool maintained that no expenditures in excess of $25,000 were authorized unless Earp obtained their specific approval.

The cost of the work performed by Earp totaled $37,821.47, and he was paid $20,000, leaving an unpaid balance of $17,821.47. The unpaid balance was the basis of the the mechanic's lien, and the jury verdict, for all but $8.00 of that sum, was returned in favor of Earp.

Earp testified that he performed all of the work in a proper manner as required by the terms of the agreement reached between himself and Vanderpool. Additionally, he stated that it was necessary for him to replace or repair all the sewer and water lines because of negligent and improper installation by the prior contractor. This work, he contended, was not included in his original estimate and was performed at the defendants' direction when it became apparent that water and sewage were leaking from the pipes.

According to Earp, the only complaints he received from Vanderpool concerned the septic system, which he fixed, and the width of a road, which he felt was adequate. Earp admitted that he did not dispose of certain debris on the tract since he was simply asked to move it.

The defendant presented the detailed testimony of an expert witness, Earl Mullens, as to the reasonable cost and workmanlike manner of the work performed by Earp. Mullens stated that the width of one particular road was deficient and the installation of the culvert system was not accomplished in a workmanlike manner. He testified as to the specific costs of repairs to the road and culvert system as well as the cost of completing the work which the defendants maintained was required by the contract. Mullens stated that he would have performed these services for the defendants for a cost of $15,067.00 compared to the $37,821.00 charged by the plaintiff.

## I.

Upon the trial of the case, the defendants moved to dismiss the complaint upon the ground that the notice of mechanic's lien did not contain a sufficient description of the improvements upon the realty to properly perfect the lien. The notice was not in the statutory form prescribed in *W. Va. Code*, 38-2-8. The notice stated:

> "Notice is hereby given, in accordance with the laws of the State of West Virginia, that the undersigned claims a lien to secure the payment of $17,821.47 with interest from January 8, 1973, until paid on the property described in Exhibit A attached hereto and made a part hereof. This lien is upon the buildings, structures and improvements located on said land also."

The attached exhibit, incorporated into the notice by reference, contained a metes and bounds description of the land. Nowhere in the notice or attached exhibit is the conclusory description of "the buildings, structures and improvements located on said land" supplemented by a more detailed list of improvements. Such a list is contemplated by *W. Va. Code*, 38-2-8, and counsel places himself in peril by failing to make advantageous use of the statutory form which is provided. If, however, the description is sufficient under the law, deviation from a statutory form will not constitute error.

We have held that the notice of lien filed for recordation must describe the buildings, structures and improvements "... with sufficient definiteness that the same may be readily indentified." *Scott Lumber Co. v. Wheeling Cemetery Association*, 117 W. Va. 534, 186 S.E. 117 (1936). In *Scott Lumber*, however, no mention of any improvements or buildings was included in the notice. Applying the principle of strict construction, the Court held the lien to have been improperly perfected because of the insufficient description.

Counsel for the defendant maintains that the principles of *Scott Lumber* are applicable to the case at bar and constitute grounds for reversal. We do not agree.

The strict construction approach employed in *Scott Lumber* arose because the existence of any improvement to the vacant cemetery land was not apparent from the face of the notice. Existence of an improvement is a statutory prerequisite upon which the right to the lien depends. *W. Va. Code*, 38-2-1.

As this Court has more recently announced:

> " '. . . [if the question is ] whether a particular case is within the statute [then] a strict construction should be applied; but where it appears from the case that there is a clear right to the lien under the statute and the controversy is whether the lienor has properly proceeded to establish his lien, a liberal construction should be applied. [*Bailey Lumber Co. v. General Construction Co.*, 101 W. Va. 567, 577, 133 S.E. 135, 139.]' " *Fisher v. Reamer*, 146 W. Va. 83, 89, 118 S.E.2d 76, 79 (1961).

The challenge to the validity of the mechanic's lien in the instant case is not predicated upon whether a right to a lien *exists*, but rather whether the right has been properly *perfected*. The detail, therefore, necessary to establish a sufficient description of the improvements is subject to a liberal construction. Our position on this issue is consistent with prior cases in this and other jurisdictions. 53 Am Jur. 2d *Mechanics' Liens* § 216, p. 735; *Annot.*, 52 A.L.R.2d 12, 94.

The identification of buildings or improvements may be aided by a detailed description of the land. *Annot.*, 52 A.L.R.2d 12, 94; 53 Am. Jur. 2d *Mechanics' Liens* § 216, p. 735. In view of the facts of this case which give rise to a lien based upon improvements appurtenant to all structures upon the realty, coupled with the detailed description of the real property involved, we hold that the notice contained a sufficient description to sustain its validity.

## II.

The second major issue in this appeal, and the one upon which we must reverse the trial court, relates to

the refusal to give defendants' Instruction Nos. 3 and 4. Those instructions sought to embody the defendants' theory of negligent and unworkmanlike construction and the consequent counterclaim for damages resulting therefrom.

The only instructions submitted to the trial court for consideration were those proffered by the defendants. Of the six instructions offered by the defendants, three were given by the trial court. Of those given, none included the issue upon which the defendants sought to defend or to recover in part from the plaintiff. Detailed testimony on this issue was adduced at the trial. Selwyn Vanderpool, as well as the expert witness, Earl Mullens, cited specific examples of improper or incompleted construction tasks. Upon the refusal of defendants' Instruction Nos. 3 and 4, the jury was left without guidance as to the legal effect they might give such evidence.

As to the refused instructions, plaintiff's counsel had only commented generally, "We would object to No. 4" and the court was equally terse in stating "No. 3 will be refused. . . . I will refuse No. 4 as amended and as binding." The defendants thereafter did not object nor except to the trial court's refusal and no objection nor exception was noted on either instruction.

The defendants contend that the trial court erred in refusing the instructions because it failed to state its reasons for refusal, thereby handicapping defendants in formulating their grounds for appeal. This contention is merely an indirect rebuttal of plaintiff's argument that we cannot review this ground of error because the defendants failed to make specific objections when the instructions were refused.

To preserve the right to appellate review of trial court errors regarding instructions, Rule 51 of the West Virginia Rules of Civil Procedure in part, provides:

"... No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given in-

struction, the matter to which he objects and the grounds of his objection; ..."

While this rule is normally invoked to require specific objections to the *giving* of instructions, we have, on at least one occasion refused to consider an assignment of error where there was no objection (or exception) to the lower court's *denial* of instructions. *Nesbitt v. Flaccus,* 149 W. Va. 65, 138 S.E.2d 859 (1964). We admit that some confusion may have resulted from the elimination of formal *exceptions* by Rule 46 and the dual office thrust upon *objections* by Rule 51. Under Rule 51 the objection may go to the substance of the instruction or to the court's refusal to give it.

We have on many occasions set forth the minimal requirements of Rule 51 applicable to the content of an objection to a given instruction. Where "objection" is made to a portion of the court's charge or to an instruction of opposing counsel, then the objector, to preserve the error on appeal, must state "distinctly" and precisely his grounds as specified in the Rule. *Chambers v. Smith,* 157 W. Va. 77, 198 S.E.2d 806 (1973); *Nesbitt v. Flaccus, supra.* The purpose of requiring a specific objection in this instance is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them. 9 C. Wright and A. Miller, Federal Practice and Procedure, § 2554, pp. 643-44; 5A J. Moore, Federal Practice, ¶51.04, p. 2521. *See, · Sears v. Southern Pacific Co.,* 313 F.2d 498 (9th Cir. 1963).

We have not specifically determined the minimal requirements of Rule 51 as they relate to refused instructions. We hold, therefore, that where the "objection" is serving the former office of the exception to the ruling of the court, counsel meets the minimum requirements of Rule 51 when he simply states "objection" or "exception" following the court's refusal of an instruction. To require more might be considered mere duplication or argument. *See, Thurston v. Keathley,* 143 W. Va. 795, 105 S.E.2d 181 (1958). This action is sufficient to indicate to

the court that counsel has neither receded from his request for the instruction nor acceded to the court's refusal of it. The moving party in such a situation need not belabor the obvious reasons which motivated his offer of the instruction.[1]

The appellant in the instant case did not meet even these minimal requirements to preserve his appellate rights. Thus we must determine whether to exercise the discretionary power vested in the court by this additional language in Rule 51, which provides:

"... the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection."

Such discretion must be exercised sparingly and only in exceptional cases. Where the error not preserved is obvious and substantially affects the fairness and integrity of the trial proceeding, the interests of justice may mandate the exercise of this discretionary authority.

We believe the circumstances of this case fall within that criteria. We proceed with great reluctance but have concluded that fairness to the litigants in this instance must overcome the formalities of appellate procedure. The record demonstrates a complete omission of any instruction on the issues which were of vital importance to the defendants. In view of the relatively few instructions offered to the trial court for consideration and the detailed testimony on these issues at the trial, the omission is obvious to us and should have been obvious to the trial court. We reverse the judgment of the trial court on this ground.

---

[1] "The request for an instruction which is refused serves as a sufficient basis for making known to the court the action which a party desires. Rule 46 eliminates the need for formal exceptions. However, under Rule 51 an objection to the refusal to instruct is necessary, even though this would not be necessary under Rule 46 as to other action which a party desires and has made known to the court." M. Lugar and L. Silverstein, West Virginia Rules, 384-385.

## III.

The third major issue in this case relates to the manner in which the trial court handled the examination and cross-examination of the defendants' expert witness. Specifically, two errors are alleged: (1) that the trial court erred in sustaining general objections to questions propounded to the witness by defense counsel on cross-examination; and (2) that the trial court erred by asking questions of the witness, thereby commenting on the evidence.

The asserted errors arose on cross-examination when counsel asked certain questions of the witness relating to the reasonable cost of work to be done under the contract. In view of the record which disclosed that most, if not all, of the evidence counsel sought to adduce was subsequently a part of the witness's testimony and the rather wide latitude given counsel in his examination of the witness, we find no error in this regard.

Finally the defendants object to the questions propounded by the trial court. These questions by the court occurred after counsel for the plaintiff had raised a question concerning the qualifications of the witness to testify as an expert. Counsel for the defendants maintains that these questions constitute a comment on the evidence and therefore are reversible error. Having carefully examined the record, we cannot agree. A judge has certain latitude in examining witnesses and absent abuse of discretion, there is no error. *Jones v. Hebdo*, 88 W. Va. 386, 106 S.E. 898 (1921). We find no abuse of discretion in this case.

For reasons stated in this opinion, the judgment of the Circuit Court of Wayne County is reversed and the case is remanded for a new trial.

> *Reversed and remanded;*
> *new trial awarded.*

NEELY, JUSTICE, *concurring:*

I concur in the result but strenuously dissent from the Court's holding that the language of Rule 51 mandates

that lawyers must object to a trial court's refusal to give instructions. Lawyers do not offer instructions for the purpose of having them refused; why require superfluous babble to emphasize the inherently obvious, to-wit, that the lawyer believes that the instruction correctly states the law?

Drafters of Rules of Civil Procedure, like everyone else in society including plumbers, doctors, and automobile mechanics, are occasionally inattentive. This was exactly the case when West Virginia almost wholesale adopted rules which were originally designed for the federal system of courts. In the federal system a charge, written by the Court, is used instead of specific instructions, so it makes sense to require a lawyer to "object" to the court's charge; however, in our system the lawyer moves that an instruction be given and when it is refused, technically the lawyer would "except."[1] The requirement that specific objections be made to the refusal to give offered instructions is but one example of poor choice of language for the West Virginia Rules which leads to an Alice in Wonderland result. In general under Rule 46 a moving or objecting party need not note an exception to the court's action, an obvious recognition that idle chatter adds nothing to the conduct of a law suit.

The majority's technical reading of Rule 51 when it is totally uncalled for in light of a contradiction with the clear policy enunciated by Rule 46 adds but one more

---

[1] Some elaboration on the differences between the federal and state systems will illustrate the point in the text. In federal court the trial judge himself composes a charge to the jury, based in part on his understanding of the law and the case and in part on instructions offered by counsel. In this situation a lawyer's objection to the judge's failure to include an offered instruction in the charge serves a legitimate purpose. The objection calls the judge's attention to what may have been merely an inadvertent ommission and gives the judge a chance to set matters right before it is too late. By contrast, the practice in West Virginia is for the trial judge simply to read the proffered instructions to the jury, except for those which he refuses. Any refusal to give a proffered instruction is thus a conscious and deliberate act which hardly needs the added emphasis of a lawyer's objection.

trap for the unwary to the law of this State. If, by the way, in the majority opinion it were planned to consider the instructions anyway by skating around the problem with the "plain error" rule, why did the majority bother to speak to such an unworthy subject at all? Why to add one more mother-may-I to the law so that the unwary will have yet another opportunity to be impaled upon the petard of absurd technical rules! Where would the legal profession be if simple country lawyers during the heat of battle which is a law suit could rely upon inherent logic?

I am authorized to state that Justice Wilson joins in this concurring opinion.