583 S.E.2d 76

**BADGER LUMBER COMPANY, INC., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Richard L. REDD and Wendy K. Redd; National Gulf Development, Inc., a Delaware Corporation Duly Authorized to Conduct Business in the State of West Virginia; and Steven Tice, Defendants Below, Appellees.**

No. 30847.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided April 14, 2003.

**454**

David G. Underwood, Cosenza, Underwood & Merriman, Parkersburg, for the Appellants.

William Crichton, V, William Crichton, VI, Crichton & Crichton, Parkersburg, for the Appellee.

PER CURIAM.

Appellants Richard L. and Wendy K. Redd appeal from the October 31, 2001, order of the Circuit Court of Wood County awarding judgment to Appellee Badger Lumber Company, Inc., ("Badger Lumber") against Appellee Steven Tice and enforcing a mechanic's lien filed by Badger Lumber against the Redds' residential property. Appellants further appeal from a December 7, 2001, order denying their motion for new trial. As

grounds for the appeal, Appellants assert that the mechanic's lien at issue cannot be enforced due to Badger Lumber's noncompliance with the statutory requirements for obtaining such a lien.[1] Upon our review of the relevant statutes and the record in this matter, we find that the lower court was in error with regard to the enforceability of the mechanic's lien at issue and accordingly, we reverse.

## I. Factual and Procedural Background

Appellants are the owners of a parcel of real estate known as Lot No. 8, Coram Park Addition, that is located in the Union District of Wood County. On May 8, 2000, they signed a contract with a general contractor, National Gulf Development, Inc. ("National Gulf"), for the construction of a residential dwelling on this property. During the course of their home's construction, Badger Lumber furnished and sold upon open account, certain lumber products and materials to Steven Tice, the owner of National Gulf. All of the building supplies at issue in this case were sold to Mr. Tice in his individual capacity.

On January 26, 2001, Badger Lumber filed a Notice of Mechanic's Lien in the Wood County Clerk's Office against Appellants' real estate and the improvements located on such property for cumulative unpaid bills in the amount of $33,564.73. While Badger Lumber served the notice upon Mrs. Redd at Appellants' place of residence, it did not separately serve the notice upon Mr. Redd.

Badger Lumber filed the complaint in the underlying action against the Redds, National Gulf, and Mr. Tice on April 17, 2001, through which it sought to have the mechanic's lien amount judicially determined and further sought a judgment that would force the sale of the Redds' real estate to obtain satisfaction of its lien. At the conclusion of a bench trial held on October 9, 2001, the circuit court ruled in favor of Badger Lumber. In its ruling entered on October 31, 2001, the trial court awarded judgment to Badger Lumber against Mr. Tice in the amount of $33,564.73 plus costs and interest and held that the mechanic's lien previously

1.  *See* W.Va.Code § 38–2–4 (1923) (Repl.Vol. 1997).

filed by Badger Lumber was valid and enforceable. The trial court further ordered the appointment of a special commissioner for the purpose of selling the Redds' real estate to satisfy the mechanic's lien at issue.

Appellants challenge the ruling of the lower court on two grounds. First, they assert that the mechanic's lien is not enforceable because the lien was not obtained, as required by West Virginia Code § 38–2–4 (1923) (Repl.Vol.1997), against a general contractor or a subcontractor. Rather than asserting the subject lien against National Gulf as the general contractor, Badger Lumber sought a lien against Mr. Tice, in his individual capacity. As a second basis for appeal, Appellants assert that should the lien be enforceable, it can only be enforced against Mrs. Redd's one-half interest in the property because Mr. Redd was not individually served with notice of the mechanic's lien.

## II. Standard of Review

■ The controlling standard of review was set forth in syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), in which we stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." As to those issues presented which involve issues of statutory interpretation, however, our review is *de novo*. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Accordingly, we proceed to review this matter with these standards in mind.

## III. Discussion

■ Appellants argue that the circuit court erred in granting the subject mechanic's lien against the real estate which they own because the materials furnished by Badger Lumber were not furnished or sold to a general contractor. The materialman's lien statute provides as follows:

Every person, firm or corporation, which shall furnish to any *general contractor or to any subcontractor* mentioned in sections one and two [§§ 38–21–, 38–2–2] of this article, any materials, machinery or other equipment or supplies necessary to the completion of any building or other structure mentioned in this article, or improvement appurtenant thereto, for use in the erection, construction, repair or removal thereof, by virtue of a *contract between such general contractor or subcontractor and the materialman* or furnisher of machinery, or other supplies or equipment necessary to the completion of such general contract, shall have such a lien for his compensation as is mentioned in section one [§ 38–2–1] of this article.

W. Va.Code § 38–2–4 (emphasis supplied).

■ Because the materials that Badger Lumber supplied to the home site for use in the construction of the Redds' home were supplied through an account that was set up and billed to Mr. Tice, individually, rather than to National Gulf, the Redds contend that Badger Lumber has not met the statutory requisites necessary for entitlement to a mechanic's lien. *See id.* It is axiomatic that "[t]he perfecting and enforcing of a mechanic's lien in this jurisdiction is controlled by statute, and the lien has no existence without it." *Kendall v. Martin*, 136 W.Va. 192, 197, 67 S.E.2d 42, 45 (1951). In the same vein, this Court has held that: "The procedures available to materialmen by *W.Va.Code*, 38–2–1, *et seq.*, as amended, are wholly statutory, and consequently, one who would enforce a claim under the statutory lien procedures must substantially comply with all the applicable provisions of Chapter 38 of the *Code*." Syl. Pt. 3, *Woodford v. Glenville State College Housing Corp.*, 159 W.Va. 442, 225 S.E.2d 671 (1976).

In explanation of its business practice of setting up accounts with individuals rather than corporations, Badger Lumber testified, through its president Paul Ferrell, that:

I've always—it's my policy, being a lawyer, when I deal with a customer, I try to keep it in their individual name. I try to deal with them on an individual basis. I personally don't like corporations where you

can hide assets and not have any assets in a corporation, and it's always been our policy at Badger's to try to keep it in the individual's name unless it's a big corporation like DuPont or somebody that's listed on Dunn & Bradstreet.

While Mr. Ferrell maintained that he could not have been aware of the contractual agreement between the Redds and National Gulf, there was conflicting testimony on this issue.[2]

Badger Lumber suggests that principles of agency should be used to allow it to utilize the mechanic's lien statute. Maintaining that it never intended to deal with Mr. Tice as the agent of National Gulf, Badger Lumber argues that nonetheless he was the actual agent of his wholly owned corporation. Accordingly, Badger Lumber submits that Mr. Tice bound his principal, National Gulf, when he acquired materials on behalf of the corporation for use in building the Redds' house.

It is well recognized that: "Mechanics' lien statutes must be strictly construed with reference to those requirements upon which the right depends and liberally construed with reference to the manner in which the right is perfected." Syl. Pt. 1, *Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976). Thus, the issue of whether Badger Lumber acquired a right to a materialman's lien under the provisions of West Virginia Code § 38-2-4, through principles of agency or otherwise, must be determined based on a strict construction of the statutory requirements.[3] The statute is clear that the right to a materialman's lien arises from the existence of a contract, written or implied, between a "general contractor or subcontractor and the materialman." W.Va. Code § 38-2-4. In this case, Badger Lum-

ber chose not to contract with the general contractor, but instead to do business solely with Mr. Tice in his individual capacity. Consequently, Badger Lumber is not a member of a class entitled to the protections of the mechanic's lien statute. *See Rosenbaum v. Price Constr. Co.*, 117 W.Va. 160, 164, 184 S.E. 261, 263 (1936) (recognizing that "[b]eyond those three classes [general contractors, subcontractors, and persons contracting with such entities], the [materialman's] statute affords no protection").

In full recognition of the harshness of the remedies necessary to enforce a mechanic's lien such as judicial sale and attachment, the law necessarily insists upon strict compliance with the statutory requirements for enforcement of such a lien. *See De Lung v. Baer*, 118 W.Va. 147, 149, 189 S.E. 94, 95 (1936) (observing that "[a]ttachment is a harsh remedy, strictly statutory" and " '[t]he remedy by attachment, being authorized alone by statute and in derogation of the common law, ... its application will be carefully guarded by the courts and it will be confined strictly within the limits prescribed by the statute' ") (quoting Syl. Pt. 1, *Delaplain v. Armstrong*, 21 W.Va. 211 (1882)). Construing the statute in strict fashion, as is required, we cannot conclude that the right to a materialman's lien arose under the facts of this case. Declining to utilize principles of agency for purposes of meeting the requirements of the mechanic's lien statute, we conclude that the requisite contractual agreement between a materialman and a general contractor or subcontractor is not present in the case *sub judice*. *See id.* Accordingly, the circuit court erred in determining that the mechanic's lien asserted by Badger Lumber was valid and enforceable.

2. Whereas Mr. Ferrell claimed that he was unaware that the materials that were supplied to the Redds' home site were utilized in connection with a construction contract between National Gulf and Appellants, Mr. Tice testified that:

"Paul [Ferrell] was always aware of the company that I owned. He was well aware of that. We have a very close relationship. Paul had seen my portfolio of homes put together, which was National Gulf Development prominently displayed on every page, every house. Every check I sent Paul was headed with National Gulf Development, Incorporated. Paul was

very aware of the fact that I had a corporation and that I built a lot of houses.... And also, I don't believe I ever signed anything personally as far as personally guaranteeing anything."

3. The issues presented by this case do not concern the perfection of the lien, such as sufficient detail regarding the materials provided or the timeliness of the filing of the notice. Consequently, the statutory provisions are subject to strict, rather than liberal construction. *See Earp*, 160 W.Va. at 113, 232 S.E.2d at 514, syl. pt. 1.

Having determined that the circuit court committed error in finding that a valid and enforceable mechanic's lien was in existence in this case, we reverse the lower court's holding with regard to the enforceability of the mechanic's lien.[4]

Reextricated.

Reversed.

---

**4.** Based on our determination that Badger Lumber failed to establish its right to a materialman's lien, we do not address the alternate ground of appeal predicated on lack of service.