753 S.E.2d 612

**Mike HARPER, Plaintiff Below, Petitioner**

v.

**Gavin SMITH, Defendant Below, Respondent.**

No. 11–0490.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2012.

Decided March 26, 2012.

Cecil C. Varney, Esq., Varney Law Office, Williamson, WV, for Petitioner.

James R. Fox, Esq., Fox Law Offices, PLLC, Hurricane, WV, for Respondent.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Mingo County entered on October 21, 2010, in this declaratory judgment action arising out of a dispute over ownership of a certain parcel of property. In the final order, the circuit court granted summary judgment in favor of the respondent and defendant below, Gavin Smith, and declared that he is the owner of the subject real estate. In this appeal, the petitioner and plaintiff below, Mike Harper, argues that summary judgment was not proper and that there are genuine issues of material fact particularly with regard to whether Gavin Smith was a bona fide purchaser of the property.

This Court has before it the petition for appeal, the response thereto, and the entire record. For the reasons set forth below, the final order is affirmed.

# I.

## FACTS

The property at issue in this case is known as Lot 9 of the Ellis Heights Subdivision located in the Stafford District of Mingo County. The property was purchased by Amos and Lois Harper on January 24, 1974. In 1997, the Harpers obtained a loan in the amount of $32,000.00 through TMS Mortgage, Inc., d/b/a The Money Store, and used the property as collateral to secure the loan. By 2001, the Harpers were in default on the loan, and the property was sold at a foreclosure sale at the Mingo County Courthouse on July 10, 2001, to the Bank of New York. It is undisputed that the Harpers received notice that their loan was in default and that the property would be sold at a foreclosure sale. The Harpers were advised of the date, time, and location of the foreclosure sale. Lois Harper has stated, though, that she called the courthouse on the day of the foreclosure sale and was told that the sale was not going to occur because it was raining.

The Harpers had moved to Huntington, West Virginia, prior to the foreclosure sale. They filed for bankruptcy shortly thereafter but never attempted to have the sale set aside, nor did they take any steps to have the property conveyed back to them. Amos Harper died in 2002.

After the foreclosure sale, the property was assessed and taxed under the name of the Bank of New York. However, the property taxes were not paid from 2003 through 2006. Consequently, on October 9, 2007, the Sheriff of Mingo County sold the tax lien on the property. The tax lien was purchased by Marquis Development, LLC (hereinafter "Marquis").[1] Thereafter, Marquis requested and received a tax deed and then sold the property to Gavin Smith (hereinafter "Mr. Smith").[2] After Mr. Smith purchased the property, he served an eviction notice on

Lois Harper's son, Mike Harper (hereinafter "Mr. Harper"), the petitioner herein, who was apparently living on the property in a mobile home. Mr. Smith also filed a complaint in the Magistrate Court of Mingo County seeking to evict Mr. Harper. In response, Mr. Harper claimed that he was living on the property with the permission of his mother, Lois Harper, whom he asserted was the owner of record. The magistrate concluded that title to the property was in question and dismissed the eviction action as the ownership issue was not within the magistrate court's jurisdiction.

On September 10, 2008, the Harpers filed this declaratory judgment action in the Circuit Court of Mingo County against Marquis and Mr. Smith. The Harpers claimed that they were the owners of the subject property. Both Marquis and Mr. Smith filed motions for summary judgment. After a hearing, the court granted the Harpers additional time to file supplemental pleadings. Lois Harper died on April 3, 2010. Her estate was substituted as a party plaintiff. Ultimately, the circuit court found that the Harpers had not established any genuine issue of material fact and granted summary judgment in favor of the defendants finding that Mr. Smith was a bona fide purchaser and the owner of the subject property. This appeal followed.

# II.

## STANDARD OF REVIEW

It is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure,[3] "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry

---

1. Marquis purchased the tax lien for the sum of $1,200.00.

2. Marquis sold the property to Mr. Smith for $25,000.00.

3. Rule 56(c) of the West Virginia Rules of Civil Procedure states, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards in mind, the issues in this case will be considered.

## III.

## DISCUSSION

■ Mr. Harper contends there are genuine issues of material fact in this case, and therefore, the circuit court erred by granting summary judgment. First, Mr. Harper asserts that there is a question of fact with regard to whether the Bank of New York actually obtained title to the property. In that regard, he notes that his parents filed for bankruptcy on July 19, 2001. The foreclosure sale had just occurred on July 10, 2001. The trustee's deed was dated July 16, 2001, but it was not recorded until October 1, 2001. Mr. Harper challenges the validity of the deed received by the Bank of New York given the bankruptcy proceeding.

■ Contrary to Mr. Harper's contentions, there is clear evidence in the record showing that the Bank of New York purchased the property at the foreclosure sale on July 10, 2001, and obtained a valid title. In particular, the record includes various letters sent to the Harpers advising them that their loan was in default; the trustee's notice of sale; the report of the trustee indicating that the property was in fact sold at the front door of the Mingo County Courthouse on July 10, 2001, to the Bank of New York for $9,082.11; and the trustee's deed conveying the property to the purchaser, the Bank of New York. During her deposition, Lois Har-

per admitted that the foreclosure occurred before she and her husband filed for bankruptcy. She further testified that she did not tell her bankruptcy attorney about the foreclosure. Even Mr. Harper acknowledges that the sale occurred prior to his parents filing their bankruptcy application. This Court has held:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syllabus Point 3, *Williams, supra.* Mr. Harper has not satisfied his burden; his assertions have no basis in fact. He has presented no documentation establishing that his parents even attempted to set aside the deed or reverse the foreclosure. In sum, Mr. Harper has failed to produce any evidence showing the existence of a genuine issue for trial with respect to the validity of the deed obtained by the Bank of New York.

■ Mr. Harper also contends that a question of fact exists as to whether Marquis obtained a valid title to the property. In that regard, Mr. Harper first argues that Marquis failed to give him notice of the right to redeem after it purchased the tax lien. Mr. Harper claims that he should have been given notice because he was living on the property at the time of the tax sale.

■ Before a tax purchaser may secure a deed to the subject real estate, the purchaser is required to provide a list of persons who can redeem the property so that they can be notified of their right to pay the delinquent taxes and reclaim the property. Pursuant to W. Va.Code § 11A–3–19(a) (1998) (Repl.Vol. 2005),[4]

---

4. The 1998 version of the statute is set forth in this opinion because it was in effect when the events giving rise to this case occurred. The

statute was amended in 2010; "State Auditor" was substituted for "clerk" in subsection (a) and

At any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year, the purchaser, his or her heirs or assigns, in order to secure a deed for the real estate subject to the tax lien or liens purchased, shall: (1) Prepare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notice as provided in sections twenty-one [§ 11A–3–21] and twenty-two [§ 11A–3–22] of this article[.]

In *Rollyson v. Jordan*, 205 W.Va. 368, 518 S.E.2d 372 (1999), this Court was tasked with determining who is entitled to a "notice to redeem" when property has been sold as a result of the nonpayment of its real property taxes. Upon review and consideration of the relevant statutory provisions, this Court held in Syllabus Point 4 of *Rollyson* that

[t]he persons entitled to notice to redeem in conjunction with a purchaser's application for a tax deed, pursuant to W. Va.Code § 11A–3–19(a)(1) (1994) (Repl.Vol. 1995), are those persons who are permitted to redeem the real property subject to a tax lien or liens, as contemplated by W. Va.Code § 11A–3–23(a) (1995) (Repl.Vol. 1995), which persons include "the owner" of such property and "any other person who was entitled to pay the taxes" thereon.

When Marquis purchased the tax lien, neither Mr. Harper nor his mother was a record owner of the property. Likewise, neither Mr. Harper nor his mother was a person entitled to pay the taxes thereon. Thus, there is no merit to Mr. Harper's claim that he was entitled to notice of the right to redeem the property.

Mr. Harper further argues that even if he was not entitled to notice of the right to redeem, the notice that was given by Marquis to the apparent owner, the Bank of New York, was fatally defective. In that regard, he points out that the "State Auditor's Office Notice to Redeem Form" shows that notice to the Bank of New York was sent to R. Vance Golden, III, an attorney in Parkersburg, West Virginia, and that the letter was returned as undeliverable. According to Mr. Harper, there is absolutely no evidence that

Mr. Golden was an agent or representative of Bank of New York. Mr. Harper says that, in fact, Mr. Golden was the trustee for the lender that held the deed of trust on the property, and he is the person who actually conducted the foreclosure sale for that lender. Thus, Mr. Harper reasons that there is a question of fact as to whether Marquis obtained a valid tax deed.

■ Upon review, there appears to be possible merit to Mr. Harper's claims with regard the defectiveness of the notice of the right to redeem sent to the Bank of New York. Nonetheless, the fact remains that the Harpers were no longer owners of the property when the tax sale occurred. Consequently, Mr. Harper does not have standing to challenge the validity of the tax deed received by Marquis. "[S]tanding is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' Black's Law Dictionary 1413 (7th ed.1999)." *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002).

Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syllabus Point 5, *Findley*.

In *Belcher v. Greer*, 181 W.Va. 196, 382 S.E.2d 33 (1989), this Court found that a mineral estate owner who had not paid the property taxes on his mineral interests and, therefore, had forfeited his mineral interests to the State did not have standing to bring an action for trespass and wrongful conversion of an undisclosed amount of coal from the subject property until he paid the taxes and redeemed the land. In other words, until the mineral owner redeemed his ownership of the mineral interests in the property and thereby obtained a legally protected in-

other minor stylistic changes were made. *See* W. Va.Code § 11A–3–19 (2010) (Repl.Vol.2010).

terest, he could not assert a cause of action for trespass and conversion. In this case, Mr. Harper did not own the property when the tax sale occurred and, thus, never had a right to redeem. The right to redeem in this instance belonged to the Bank of New York who is not a party in this case.[5] Consequently, Mr. Harper has not suffered an invasion of a legally protected interest and, therefore, has no standing to challenge the validity of the deed received by Marquis.

Mr. Harper's last argument in this appeal is that the circuit court erred by concluding that Mr. Smith was a bona fide purchaser. This Court has explained that a bona fide purchaser is

" 'one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry.' " *Stickley v. Thorn*, 87 W.Va. 673, 678, 106 S.E. 240, 242 (1921) (quoting *Carpenter Paper Co. v. Wilcox*, 50 Neb. 659, 70 N.W. 228 (1897)). *See also Simpson v. Edmiston*, 23 W.Va. 675, 680 (1884) ("[A] bona fide purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it."); Black's Law Dictionary 1249 (7th ed.1999) (defining a bona fide purchaser as "[o]ne who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.").

*Subcarrier Communications, Inc. v. Nield*, 218 W.Va. 292, 300, 624 S.E.2d 729, 737 (2005). Mr. Harper contends that Mr. Smith cannot claim the status of a bona fide purchaser because the title search he had completed before he purchased the property from Marquis indicated that the notice of the right to redeem was not actually served upon the Bank of New York.

Upon review, this Court finds that based on the evidence in the record, the circuit court erred to the extent that it concluded that Mr. Smith was a bona fide purchaser given the fact that he was on notice of a potential defect in the tax deed received by Marquis because notice of the right to redeem was not served upon the Bank of New York. Nonetheless, we affirm the circuit court order granting summary judgment in favor of Mr. Smith because the Harpers lost title to the property as a result of the foreclosure sale in 2001 and, therefore, have no standing to challenge Mr. Smith's status as a bona fide purchaser.

In *Williams v. Precision Coil, Inc., supra*, we acknowledged that a grant of summary judgment may be sustained on any basis supported by the record. Thus, it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court.

*Gentry v. Mangum*, 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995).

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Mingo County entered on October 21, 2010, is affirmed.

Affirmed.

---

5. With respect to the Bank of New York's right to redeem, it is noted that the statute of limitation for institution of an action to set aside a tax deed is three years. W. Va.Code § 11A-4-4(a) (1994) (Repl.Vol.2010) provides:

> If any person entitled to be notified under the provisions of section twenty-two [§ 11A-3-22] or fifty-five [§ 11A-3-55], article three of this chapter is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by re-

deeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed. No deed shall be set aside under the provisions of this section until payment has been made or tendered to the purchaser, or his heirs or assigns, of the amount which would have been required for redemption, together with any taxes which have been paid on the property since delivery of the deed, with interest at the rate of twelve percent per annum.