STATE OF WEST VIRGINIA

**FILED**

**October 27, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**L.A. PIPELINE CONSTRUCTION, INC.,**
**Plaintiff Below, Petitioner**

vs)  **No. 15-0970 (Marshall County Nos. 11-C-70, 11-C-124, and 12-C-47)**

**GLASS BAGGING ENTERPRISES, INC.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

The petitioner (plaintiff below), L.A. Pipeline Construction, Inc. ("L.A. Pipeline"), by counsel, James S. Huggins and Daniel P. Corcoran, appeals the order of the Circuit Court of Marshall County entered on August 26, 2015, granting summary judgment in favor of the respondent (defendant below), Glass Bagging Enterprises, Inc. ("Glass Bagging"). L.A. Pipeline asks this Court to vacate the circuit court's order; invalidate Glass Bagging's mechanic's lien; and immediately disburse the escrow fund established in this matter to L.A. Pipeline. In response, Glass Bagging, by counsel, Mark E. Gaydos, Buddy Turner, and Hilary M. Bright, asserts that the circuit court correctly ruled in its favor and that the summary judgment order should be affirmed.

Upon our review of the parties' arguments, the pertinent authorities, and the appendix record, we find a memorandum decision affirming the circuit court's summary judgment order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Facts and Procedural History

L.A. Pipeline[1] was contracted by Caiman Energy, LLC and Caiman Eastern Midstream, LLC (jointly referred to as "Caiman") to install a pipeline in Marshall County, West Virginia. In December of 2010, L.A. Pipeline asked Glass Bagging to deliver and

---

[1]L.A. Pipeline states that it is no longer in business; that it is insolvent; and that there are currently millions of dollars in unsatisfied judgments entered against it.

1

supply sand sacks at the rate of $3,180 per load for L.A. Pipeline's use in the construction of the pipeline.

From December 17, 2010, through April 8, 2011, Glass Bagging delivered the sand sacks ordered by L.A. Pipeline at a total cost of $155,907.90. L.A. Pipeline then asked Glass Bagging to deliver three additional loads necessary to complete the pipeline. Relying upon L.A. Pipeline's assurances that payment for the prior loads would be forthcoming and that it would remit payment on the three final loads, cash on delivery, Glass Bagging delivered the three additional loads of materials on April 16, 18, and 20, 2011. All three checks that L.A. Pipeline provided for these three additional loads, each in the amount of $3,180, were returned for insufficient funds.

L.A. Pipeline never disputed that it owes the total amount of $165,447.90 to Glass Bagging for the sand sacks it delivered and which were used by L.A. Pipeline in the construction of the pipeline on behalf of Caiman. Because L.A. Pipeline failed to remit payment, on May 24, 2011, Glass Bagging filed a mechanic's lien in the Office of the Clerk of the County Commission of Marshall County against Caiman's property on which the pipeline was constructed for the total sum due of $165,447.90.

On July 28, 2011, L.A. Pipeline filed the instant action (Civil Action No. 11-C-124) seeking to collect its account receivable and other damages from Caiman totaling in excess of $3,000,000 by enforcing its own mechanic's lien that it had filed against Caiman. L.A. Pipeline named other lienholders as defendants in that action, including Pipeline Supply & Services, LLC ("Pipeline Supply") and Glass Bagging, which filed a counterclaim against L.A. Pipeline for breach of contract and unjust enrichment. In its complaint, L.A. Pipeline asked that its mechanic's lien be foreclosed; that "all liens be marshalled" and priorities determined; that Caiman's pipeline rights-of-way and pipeline be sold; and that the proceeds of such sale be used first to pay its mechanic's lien and that of Pipeline Supply.[2]

---

[2]On May 2, 2011, Glass Bagging instituted a civil action against L.A. Pipeline (No. 11-C-70) asserting claims for breach of contract and unjust enrichment. Caiman was also named as a defendant in that action. On March 15, 2012, Glass Bagging filed a second civil action (No. 12-C-47) against L.A. Pipeline titled "Complaint to Determine Creditors' Claim." Although these two civil actions, as well as L.A. Pipeline's action, appear on the circuit court's order granting summary judgment in favor of Glass Bagging, it is unclear whether these actions were ever formally consolidated by the circuit court. *See*, in part, W.Va.R.Civ.P. 42(a) ("When actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated; and it may make such
(continued...)

During the course of the litigation, Caiman entered into a confidential settlement agreement with L.A. Pipeline and Pipeline Supply which resulted in the release of their respective mechanics' liens. The parties represent that under the terms of this settlement, L.A. Pipeline and Caiman jointly filed a motion pursuant to West Virginia Code § 38-2-36 (2011) seeking to establish an escrow fund or bond in exchange for the release of Glass Bagging's mechanic's lien. Through its order entered on March 5, 2012, circuit court directed the establishment of the escrow fund in the amount of $165,447.90,[3] which was the amount claimed in Glass Bagging's mechanic's lien, and ordered the execution and recording of a release of Glass Bagging's mechanic's lien to be replaced with a lien against the escrow fund.[4]

Following the establishment of the escrow fund, Caiman was dismissed from the litigation. Thereafter, L.A. Pipeline and Glass Bagging filed competing motions for summary judgment, each claiming entitlement to the escrow fund. On August 26, 2015, the circuit court entered an order granting Glass Bagging's dispositive motion, finding there was no genuine issue of material fact that L.A. Pipeline breached its contract with Glass Bagging and would be unjustly enriched if it were not ordered to pay for the materials delivered by Glass Bagging. Regarding Glass Bagging's mechanic's lien, the circuit court found that in order to perfect a materialman's mechanic's lien under West Virginia Code § 38-2-11 (2011), notice of the lien must be provided to the property owner or the owner's authorized agent. The circuit court found that although the principal contractor is a necessary party to a civil action to enforce a materialman's mechanic's lien against the owner's property, only those entitled to notice of the lien may challenge its validity. Because L.A. Pipeline was not entitled to notice of Glass Bagging's mechanic's lien under West Virginia Code § 38-2-11, the circuit court found that L.A. Pipeline did not have standing to challenge the validity of that lien. The circuit court further ruled that even if L.A. Pipeline had standing, the property description in Glass Bagging's mechanic's lien, which L.A. Pipeline challenged, was

---

[2](...continued)
orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.").

[3]Upon the circuit court accepting payment by way of a check from United Bank made payable to the Clerk of the Circuit Court of Marshall County, the escrow fund in the amount of $165,477.90 was established.

[4]This order was subsequently amended by an order entered *nunc pro tunc* on September 17, 2012, to order the recording of a release of Glass Bagging's Notice of Mechanic's Lien, which was also of record in the office of the Clerk of the County Commission of Marshall County.

adequate and substantially complied with the West Virginia mechanics' lien statutes.[5] The circuit court specifically noted that "where it appears from the case that there is a clear right to the lien under the statute and the controversy is whether the lienor has properly proceeded to establish his lien, a liberal construction should be applied." *Fisher v. Reamer*, 146 W.Va. 83, 89, 118 S.E.2d 76, 79 (1961) (quoting *Bailey Lumber Co. v. Gen'l Constr. Co.*, 101 W.Va. 567, 577, 133 S.E. 135, 139 (1926)). The circuit court entered judgment in favor of Glass Bagging in the amount of $165,447.90, awarding both pre-judgment and post-judgment interest, and further ordered that "the escrow fund established in the amount of $165,447.90 be released to Glass Bagging upon the entry of this order, the same shall be a credit against said Judgment."

On September 1, 2015, the Circuit Clerk issued a check distributing the escrow fund to Glass Bagging. That same day, L.A. Pipeline filed an emergency motion to stop payment on the check. By order entered September 2, 2015, the circuit court granted the stay. This appeal followed.

## II. Standard of Review

Our review of the circuit court's summary judgment order is plenary. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Against this standard, the parties' arguments will be considered.

## III. Discussion

### A. Standing

L.A. Pipeline asserts that the circuit court erred in ruling that it did not have standing to challenge Glass Bagging's mechanic's lien. It relies upon *Harper v. Smith*, 232 W.Va. 655, 753 S.E.2d 612 (2012), wherein this Court held that

> "[s]tanding is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'—an invasion of a legally protected interest

---

[5]L.A. Pipeline also challenges the circuit court's ruling that Glass Bagging's now-discharged mechanic's lien "was and should henceforth be considered to be valid" so as to "uphold the principles of equitable resolution and prevent[] unjust enrichment[.]"

which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court." Syllabus Point 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

*Harper*, 232 W.Va. at 655, 753 S.E.2d at 613, syl. pt. 6. Arguing that it has an injury-in-fact, L.A. Pipeline maintains absent Glass Bagging having a valid mechanic's lien, which would have superior priority to L.A. Pipeline's mechanic's lien,[6] L.A. Pipeline would receive the money held in escrow.[7]

Glass Bagging asserts the circuit court correctly ruled that L.A. Pipeline lacks standing to challenge its mechanic's lien because the lien is against Caiman's pipeline. Maintaining that any procedural or substantive arguments challenging the validity of its lien belonged to Caiman, Glass Bagging adds that the validity of its lien had no effect on its breach of contract claim against L.A. Pipeline. Glass Bagging argues that any interest L.A. Pipeline might have in the escrow fund because of its numerous other creditors does not give L.A. Pipeline an injury-in-fact nor standing to challenge Glass Bagging's lien. We agree.

A mechanic's lien is often filed by an entity that is not in privity of contract with the owner whose property has been improved through the work, material, or labor supplied by the mechanic's lienholder. "The basis of any [mechanic's] lien is notice to the owner, by the contractor, or any subcontractor, [or any materialman], that he has furnished material . . . in the construction of a . . . structure on land." *Kendall v. Martin*, 136 W.Va. 192, 197, 67 S.E.2d 42, 45 (1951). The materialman must provide notice of the mechanic's lien only to the property owner or his designated agent. W.Va. Code § 38-2-11.

The mechanic's lien statutes also provide a procedure through which the owner's property may be sold to satisfy the lien. The property owner may defend against the forced sale of the property by challenging the sufficiency of lien, such as whether the property description set forth therein was sufficient. In *Cordes v. Ralston*, 12 Pa. D. 438 (Pa. Ct. Comm. Pls. 1903), the court addressed a situation where the property owner did not

---

[6]Under West Virginia Code § 38-2-18 (2011), a materialman's mechanic's lien is superior in priority to a contractor's mechanic's lien.

[7]L.A. Pipeline notes that its receipt of the escrow fund would be subject to its secured lien creditor, United Bank.

5

object to a subcontractor's mechanic's lien; rather, the general contractor attacked the lien for "irregularity and want of formal requirements." *Id.* As the court aptly explained:

> The [mechanic's] lien merely constitutes an encumbrance upon the owner's real estate, and in no respect touches the contractors. If the owner chooses to submit to the lien, and actually pays it, the contractors will not thereby be concluded. Their right to defend against a suit on the lien, and to prove that "the materials were never furnished for the buildings, or that the charge was excessive, or that the material had been paid for" . . . will remain, and if it then appears that nothing is due from them to the sub-contractor, neither the lien nor payment of it by the owner will diminish his accountability to the contractors.

*Id.* (internal citation omitted). Other courts agree that challenges concerning whether a mechanic's lien meets statutory requirements for such liens belongs to the property owner. *See Williams & Works, Inc. v. Springfield Corp.,* 257 N.W.2d 160, 163 (Mich. Ct. App. 1977) ("Defendant [mortgagee] has no standing to complain of procedural deficiencies of which only the owner of the property can complain."); *Newman v Valmar Elec. Co.,* 801 N.Y.S.2d 731 (N.Y. Sup. Ct. 2005) (finding shareholders in cooperative apartment building lacked standing to challenge mechanic's lien filed against property owner). Moreover, where an owner pays its contractor "any part or all of the contract price[,]" such payment does not "affect, impair or limit the lien of the . . . materialman[,]" subject to exceptions that have no application here. W.Va. Code § 38-2-21 (2011 & 2016 Supp.).

As indicated above, L.A. Pipeline asserts that it has standing to challenge the sufficiency of the property description in Glass Bagging's mechanic's lien because upholding the lien's validity would adversely affect the value of L.A. Pipeline's inferior mechanic's lien. Even if we were to agree with that argument, once L.A. Pipeline settled and released its mechanic's lien pursuant to its confidential settlement with Caiman, it simply no longer had a mechanic's lien, inferior or otherwise, that could be adversely impacted by Glass Bagging's superior lien.

Once the escrow fund was established, the fund expressly stood in the place of Caiman's pipeline as security for Glass Bagging's mechanic's lien. While West Virginia Code § 38-2-36 contemplates challenges to the mechanic's lien after an escrow fund is established, Caiman, the property owner, did not assert that Glass Bagging's mechanic's lien was insufficient in any way. Instead, Caiman was dismissed from the litigation following

6

its settlement with L.A. Pipeline.[8] There being no party left in the litigation with standing to challenge Glass Bagging's mechanic's lien, and given the indisputable debt owed to Glass Bagging for the materials that it delivered and which were used by L.A. Pipeline in the construction of Caiman's pipeline, the circuit court correctly ordered the disbursement of the escrow fund to Glass Bagging in satisfaction of its mechanic's lien.

Even if we were to assume, *arguendo*, that L.A. Pipeline had standing to challenge the sufficiency property description in Glass Bagging's mechanic's lien, we find the property description was sufficient for the reasons set forth below.

## B. Sufficiency of Property Description

West Virginia Code § 38-2-11 provides that a materialman's mechanic's lien must include "an adequate and ascertainable description of the real estate to be charged[.]" Glass Bagging's mechanic's lien set forth the following property description: "1501 Wheeling Avenue, Glendale, Marshall County, West Virginia including pipeline installed by L.A. Pipeline Construction Co. for Caiman Energy LLC from December 17, 2010 to April 20, 2011 in Marshall County, West Virginia."

Citing *Duncan Box & Lumber Co. v. Stewart*, 126 W.Va. 871, 30 S.E.2d 391 (1944), L.A. Pipeline asserts that Glass Bagging's property description was inadequate to provide sufficient notice of its lien. In *Duncan Box*, this Court refused to uphold a mechanic's lien that listed the correct owner, but the entirely wrong parcel of property. L.A. Pipeline states that the street address in Glass Bagging's lien was not a location where the materials were used in the construction of the pipeline and that the reference to the pipeline in Marshall County was insufficient to provide notice to those who may be interested in the property. L.A. Pipeline argues that Glass Bagging should have provided a metes and bounds description of the pipeline's location.[9]

Noting that substantial compliance with the mechanic's lien statutes is all that is required, and that a liberal construction of the statutory requirements is to be applied given

---

[8]Pursuant to the circuit court's order entered March 5, 2012, L.A. Pipeline's claims against Caiman were dismissed, with prejudice, and Caiman's counter-claim and cross-claims were also dismissed, with prejudice.

[9]Although L.A. Pipeline states that it provided a metes and bounds description in its own mechanic's lien, what it actually provided was a list of various rights-of-way and surface agreements, which, if located and examined, would presumably include metes and bounds descriptions.

its clear right to the lien, Glass Bagging asserts that its lien contained an adequate and ascertainable description sufficient to provide notice to the owner and interested persons. Unlike the lien under examination in *Duncan Box*, Glass Bagging points out that its lien did not identify the wrong property and argues that extraneous proof from other documents of record in the courthouse could be used to identify the property. Not knowing precisely where L.A. Pipeline placed the materials that it delivered along the course of the pipeline, Glass Bagging states that it identified the entire pipeline installed by L.A. Pipeline for Caiman in Marshall County during a specific time period. Glass Bagging adds that under West Virginia Code §38-2-29 (2011),[10] a materialman is not required to name or describe every improvement, lot, or parcel.

As we begin our examination of the property description in Glass Bagging's mechanic's lien, we are mindful of the liberal construction to be applied to our mechanic's lien statutes:

> In perfecting his lien, the claimant of the lien is required to comply only substantially with the pertinent statutory provisions. 'Where there is a clear right to a mechanic's lien under the statute, and the controversy is whether the lienor has properly proceeded to perfect and preserve his lien, a liberal construction should be applied.'. . . . [W]here it appears from the case that there is a clear right to the lien under the statute and the controversy is whether the lienor has properly proceeded to establish his lien, a liberal construction should be applied.

*Fisher*, 146 W.Va. at 88, 118 S.E.2d at 79 (internal citations omitted). Indeed,

> [t]he purpose of the mechanics' liens statutes is to protect any person who increases the value of another person's real property by furnishing labor or materials. These statutes are remedial, and, therefore, are to be liberally construed in order that they serve the purpose for which they have been enacted.

Syl. Pt. 2, *Carolina Lumber Co. v. Cunningham*, 156 W.Va. 272, 192 S.E.2d 722 (1972). Moreover, "[m]echanics' lien statutes must be strictly construed with reference to those

---

[10]West Virginia Code §38-2-29 provides, in part, that "it shall not be necessary for such lienor to give and record a notice as to each separate building or structure or improvement thereto."

requirements upon which the right depends and liberally construed with reference to the manner in which the right is perfected." Syl. Pt. 1, *Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976).

Unlike the construction of a home, building, or bridge, for example, where a materialman knows precisely where its materials are being used, a pipeline is clearly different, as Glass Bagging has indicated. In fact, we find the reference in Glass Bagging's lien to the pipeline constructed for Caiman in Marshall County is not unlike the property description this Court deemed sufficient in *H.C. Houston Lumber Co. v. Wetzel & T. Ry. Co.*, 69 W.Va. 682, 72 S.E. 786 (1911). In *H.C. Houston Lumber*, the company that furnished material used in the construction of a railway described the property on which its mechanic's lien was claimed as "'the railway of said corporation situate in the counties of Wetzel and Tyler and extending from the city of Sistersville in Tyler county to the town of Brooklyn in Wetzel county.'" *Id.* at 689, 72 S.E. at 789. Observing the mechanic's lien statute required the property description to be "sufficiently accurate only for identification[,]" this Court found that "[b]ecause of the character of a railway, traversing as it does in this case the streets and roads of a town and county, the notoriety which is necessarily given such a work of internal improvement, the description in this lien is sufficiently accurate we think for identification." *Id.*

In addition, "the fact that [the] description could have been more precise does not take it out of substantial compliance"[11] with West Virginia Code § 38-2-11. As this Court noted in *Duncan Box*, "the aid of extraneous proof for the purpose of identifying the property"[12] is often required. Here, such extraneous proof would likely be helpful. Knowing precisely where it constructed Caiman's pipeline in Marshall County, L.A. Pipeline was able to list numerous pipeline rights-of-way and surface agreements as part of the property description in its mechanic's lien. The appendix record reflects that L.A. Pipeline's lien was placed of record with the Clerk of the County Commission of Marshall County in Lien Book 8, immediately following Glass Bagging's mechanic's lien. These factors in combination reflect that anyone conducting a title search on property traversed by Caiman's pipeline in Marshall County would find these various rights-of-ways and surface agreements and the mechanic's liens filed against Caiman.

Under the particular facts and circumstances of this case, including Glass Bagging's clear right to its mechanic's lien as the result of L.A. Pipeline's failure to remit

---

[11] *Treasure Valley Plumbing & Heating, Inc. v. Earth Resources Co.*, 684 P.2d 322, 325 (Idaho Ct. App. 1984).

[12]*Duncan Box*, 126 W.Va. at 873, 20 S.E.2d at 392.

payment for the materials it supplied and which were used in the construction of Caiman's pipeline, as well as the liberal construction to be applied to the manner in which the lien was perfected, we find the property description in Glass Bagging's mechanics' lien was adequate.

## C. Timeliness

L.A. Pipeline also asserts that Glass Bagging did not timely assert a claim to enforce its mechanic's lien, as contemplated under West Virginia Code § 38-2-34 (2011 & 2016 Supp.). Glass Bagging responds that under West Virginia Code § 38-2-34, a civil action to enforce a mechanic's lien shall "inure to the benefit of all other persons having a lien under this article on the same property." Because its mechanic's lien was already before the circuit court by virtue of L.A. Pipeline's action seeking to marshal and prioritize all liens filed against Caiman's pipeline, Glass Bagging asserts there was no need for it to file a separate action seeking to enforce its mechanic's lien.

This issue of timeliness is not addressed in the summary judgment order being appealed. This is undoubtedly attributable to the fact that L.A. Pipeline stated in its memorandum in support of its summary judgment motion that "[t]he sole issue" for the circuit court to determine is whether "the legal description of the property subject to the lien is sufficient to satisfy the statutory requirements[.]" Because the timeliness issue was not addressed by the circuit court, we decline to consider it. *See* Syl. Pt. 2, *Duquesne Light Co. v. State Tax Dep't.*, 174 W.Va. 506, 327 S.E.2d 683 (1984) (internal citation omitted) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.").[13]

## IV. Conclusion

For the reasons set forth above, the August 26, 2015, summary judgment order of the Circuit Court of Marshall County is affirmed. The case is remanded to the circuit court for further proceedings consistent with this memorandum decision.

Affirmed.

**ISSUED:** October 27, 2016

---

[13]Having found in favor of Glass Bagging on the validity of its statutory mechanic's lien, we need not address whether the circuit court correctly found that Glass Bagging also had an equitable lien.

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II