IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

FILED

March 27, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 21-0784
_____

JODY OELSCHLAGER, D.V.M. and CHARLES WILSON
Plaintiffs Below, Petitioners,

v.

GAREN E. FRANCIS, DIANA L. FRANCIS, and DANIEL E. FRANCIS
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Marshall County
The Honorable Jeffrey D. Cramer, Judge
Civil Action No. 20-C-64(C)

AFFIRMED
_____

Submitted:  February 1, 2023
Filed:  March 27, 2023

D. Kevin Coleman, Esq.                          Thomas E. White, Esq.
Farmer, Cline & Campbell, PLLC                  White Law Office
Morgantown, West Virginia                       Moundsville, West Virginia
Counsel for the Petitioners                     Counsel for the Respondents

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat.'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.      "To reform a deed on the ground of mistake, the mistake must be mutual (that is, participated in by both parties), and must be made out, by clear and convincing proof, beyond reasonable controversy; and in no case will it be made to the injury of a bona fide purchaser for value without notice."  Syl. Pt. 2, *Robinson v. Braiden*, 44 W. Va. 183, 28 S.E. 798 (1897).

3.      "A party is not entitled to protection as a bona fide purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests."  Syl. Pt. 2, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.*, 63 W. Va. 685, 60 S.E. 890 (1908).

**WOOTON, Justice:**

The Petitioners, Jody L. Oelschlager, D.V.M. and Charles K. Wilson, appeal the circuit court's final order entered September 1, 2021, denying them declaratory relief in which they sought to reform a 2009 deed due to mutual mistake, and finding that the respondents Garen E. Francis, Diana L. Francis and Daniel E. Francis were bona fide purchasers of the subject property who did not have notice that there was a mistake in the 2009 deed.[1] The petitioners argue that the circuit court erred: 1) in determining that the respondents were bona fide purchasers of the garage tract; and 2) in finding that the petitioners' burden required proof of actual bad faith ("mala fides") by the respondents. After considering the parties' briefs, oral arguments, the appendix record, the applicable law, and all other matters before the Court, we find that the circuit court committed no error and affirm the court's decision.

## I. Facts and Procedural Background

In 1997, the petitioners purchased property located at 2203 First Street in Moundsville, West Virginia. Petitioner Oelschlager, a licensed veterinarian, maintained her veterinary practice (The Family Pet Practice, also referred to as the "veterinary practice property") at this location from 1997 until 2016.

---

[1] The circuit court held a bench trial on the issue of whether the respondents were bona fide purchasers before making a decision in this case.

1

On June 24, 2002, the petitioners purchased property at 2205 First Street, which was located next door to The Family Pet Practice. This property included a residence fronting onto First Street and a detached two-car garage at the rear of the property that faced a side alleyway. The petitioners used the detached garage as additional off-street parking for the veterinary practice and a portion of the yard for dog walking and collection of samples when needed.[2]

In 2009 the petitioners listed the 2205 First Street property with realtor Denise Pavlik ("realtor Pavlik"), who worked for Paull Associates. The sales listing provided that the "Garage on rear of property DOES NOT convey; owner will work with any potential buyer for access to one side of the garage." On September 4, 2009, the petitioners entered into a "Real Estate Purchase Agreement" ("purchase agreement") with Thomas G. Hunt in which he agreed to purchase the 2205 First Street property for $62,500. An addendum to the purchase agreement, executed the same day, provided: "Buyer is aware that the garage DOES NOT convey with this property as stated on MLS sheet 11171. Seller will obtain a survey with new boundaries lines." Further, the appraisal of the

---

[2] In December, 2007, the petitioners filed a petition with the Moundsville Planning Commission ("the planning commission") seeking to subdivide the 2205 First Street property into two tracts, severing the rear garage and a small portion of the yard from the house and remaining yard. In early 2008, the proposed subdivision was approved for the 2205 First Street property. The subdivision plat was recorded in the county clerk's office on April 1, 2008; however, the recorded plat was not indexed in the name of either of the petitioners. It was undisputed that the respondents could not have discovered the subdivision plat in a title examination.

2

property commissioned by Mr. Hunt's lender noted that the two-car garage was not included in the valuation and sale of the property as it previously had been severed from the property by the sellers, the petitioners herein.

Despite the aforementioned facts, the petitioners' deed transferring the 2205 First Street property to Mr. Hunt (also referred to as the "Hunt property"), dated November 10, 2009, and prepared by Attorney J. Thomas Madden ("Attorney Madden") at the request of realtor Pavlik, conveyed the entire property including the garage to Mr. Hunt. Both of the petitioners executed the deed, which was then recorded in the county clerk's office. Thereupon Mr. Hunt moved into the 2205 First Street property, and resided there until his death in 2016.[3] At the time of his death his deed of trust on the property remained unsatisfied.

Attorney Madden used the same description contained in the petitioners' 2002 deed as the description of the property being conveyed in the deed to Hunt, which description did not exclude the garage. The petitioners claim that the conveyance of the entire property was a mistake which resulted from realtor Pavlik's failure to inform Attorney Madden that the garage tract was excluded from the sale and was not to be included in the description in the deed. Realtor Pavlik confirmed this mistake in her

---

[3] During this time between the sale and Mr. Hunt's death, the petitioners continued to use and maintain the two-car garage and a portion of the yard for The Family Pet Practice and its clients.

3

testimony during the bench trial. She stated that she had the documents – the purchase agreement and listing from the 2009 sale – that established the mistake. She further testified that these documents were not public records and could not have been discovered in any search.

In 2017, the petitioners listed the veterinary practice property located at 2203 First Street for sale with realtor Paull Associates. The listing for the veterinary practice property provided that the "garage is part of the property." A copy of the sales listing was placed in the window of the veterinary practice building for public viewing.

On September 6th and 13th, 2019, the substitute trustee published a legal advertisement for a foreclosure sale of the Hunt property to occur on September 16, 2019, at the front door of the courthouse. The respondents decided to purchase the Hunt property at the foreclosure sale.

On September 11, 2019, five days prior to the respondents' purchase of the Hunt property at the foreclosure sale, respondent Diana Francis called Paull Associates' office and spoke with realtor Erin Fonner ("realtor Fonner") about the general listing of the veterinary practice property, which was next door to the Hunt property. Realtor Fonner testified that Mrs. Francis specifically inquired whether the garage was being sold with the veterinary practice and realtor Fonner told her that it was.

4

Subsequently, on or about September 13, 2019, respondents Daniel Francis and Garen Francis conducted a title examination on the Hunt property at the courthouse and determined that Mr. Hunt owned the house and the garage; that the deed of trust was on both the house and garage; and that the entire property, including the garage, was being sold at foreclosure, as indicated in both the foreclosure advertisement and the trustee's deed to the respondents. There was no document of record indicating the petitioners still owned the garage.[4]

Realtor Pavlik testified that on September 16, 2019 – the day the respondents purchased the Hunt property at the foreclosure sale – respondent Garen Francis called her to ask whether the garage was being sold by the petitioners with the sale of The Family Pet Practice property. Ms. Pavlik confirmed that the garage was being sold with the property. Garen Francis testified that after he purchased the Hunt property at the foreclosure sale he "called the lawyer [who was the trustee] in Charleston that sold the house on foreclosure and double checked with them, and they assured me that the garage went with the property I purchased." Thereafter, on September 24, 2019, respondent Daniel Francis called realtor

---

[4] As previously mentioned, the respondents could not have located (and did not locate) the subdivision plat because it was not indexed under the petitioners' names. *See supra* note 2.

Pavlik and informed her that the petitioners did not own the garage and should remove the garage from their real estate listing.[5]

Realtor Pavlik apprised the petitioners of the respondents' claimed ownership of the garage. A joint stipulation indicated that the petitioners had made no inquiry of the foreclosure sale of the Hunt property and did not see the legal advertisement for the sale.

On May 14, 2020, the petitioners filed their "Complaint for Declaratory and Other Relief" alleging that, due to a mutual mistake, the 2009 deed transferring the petitioners' entire property located at 2205 First Street to the respondents' predecessor-in-title, Mr. Hunt, contained an error; that the petitioners and Mr. Hunt each had agreed that the petitioners would continue to own the rear half of the 2205 First Street property, specifically including a two-car garage; and that neither the petitioners nor Mr. Hunt were aware of the mistake in the deed description at the time of its execution or at any time during Mr. Hunt's ownership of the 2205 First Street residence. Further, they alleged that the respondents had knowledge of the petitioners' claim of ownership of the garage and were thus precluded from claiming status as bona fide purchasers. The respondents

---

[5] Both respondents Garen Francis and Diana Francis also testified that Mrs. Francis called petitioner Oelschlager after realtor Pavlik gave Mrs. Francis the petitioner's phone number. Mrs. Francis stated that she left a voicemail message, but petitioner Oelschlager did not return that call.

answered the complaint, and subsequently the parties filed the joint stipulation of the relevant facts with the court in support of their cross-motions for summary judgment.

Following the filing of the parties' cross-motions for summary judgment, the circuit court conducted a bench trial on August 10, 2021, to hear testimony on the issue of whether the respondents were bona fide purchasers.[6]  By order entered on September 1, 2021, the court found that the respondents were bona fide purchasers and that the petitioners had failed to prove their entitlement to declaratory judgment relief.  This appeal followed.

## II.  Standard of Review

Both of the petitioners' alleged errors arise from the findings of fact and conclusions of law made by the circuit court after conducting a bench trial.  We have previously held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[6] As previously indicated, each of the respondents testified and the petitioners presented the testimony of the two real estate agents involved, realtor Fonner and realtor Pavlik; however, neither of the petitioners testified.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat.'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996); *see also* Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."). With these standards in mind, we examine the issues before us.

### III. Discussion

The petitioners first argue that the respondents had actual knowledge that the petitioners were seeking to sell the subject garage located on the Hunt property as part of the sale of the petitioners' adjacent veterinary practice property. They contend that the respondents "understood that Petitioners claimed ownership of the garage" prior to their purchase of the subject property at the foreclosure sale. The petitioners' claim of "actual knowledge" is based on phone calls made by the respondents, Diana Francis and Garen Francis, to the petitioners' realtor concerning the real estate listing of the petitioners' veterinary practice property. The petitioners contend that when the realtor told the respondents that the petitioners' listing included the garage, the respondents were on notice of a "'suspicious circumstance'" that placed them "'upon inquiry.'" *Stickley v. Thorn*, 87 W. Va. 673, 678, 106 S.E. 240, 242 ("'A *bona fide* pur[c]haser of land is one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry.' [Syl. Pt. 2,] *Carpenter Paper Co. v. Wilcox*, 50 Neb. 659, 70 N. W. 228 [(1897)]."). Despite this "actual knowledge," the petitioners contend that

8

[t]he only action Respondents took subsequent to being advised of Petitioners['] listing of the garage was to conduct a search of the County Clerk's records which uncovered the 2009 deed from Petitioners to Hunt. The deed to Hunt was clearly contrary to Petitioners['] claim of ownership in the garage. Despite the clear conflict between the 2009 deed and Petitioners' listing of the garage for sale in 2017, Respondents took no further action to investigate.

The petitioners argue that "[a] simple inquiry would have revealed to Respondents that Mr. Hunt never owned the garage and that the garage was included in his deed by mistake."

Further, the petitioners argue that

> Respondents' search of county land records did not make them bona fide purchasers. Respondents' records search would have revealed one of two things - either Petitioners sold the garage to Hunt in 2009 and were now attempting to sell it again, or the 2009 deed to Hunt was in error. Respondents were free to take the chance that Hunt's deed was correct but that did not insulate them from the consequences of a mutual mistake in the 2009 deed. They were not innocent purchasers and cannot now be heard to complain when a reasonable investigation would have revealed the mistake in the deed.

This Court held in syllabus point two of *Robinson v. Braiden*, 44 W. Va. 183, 28 S.E. 798 (1897), that

> [t]o reform a deed on the ground of mistake, the mistake must be mutual (that is, participated in by both parties), and must be made out, by clear and convincing proof, beyond reasonable controversy; and in no case will it be made to the injury of a bona fide purchaser for value without notice.

44 W. Va. at 183, 28 S.E. at 798, Syl. Pt. 2.

9

Relying heavily upon the following syllabus points enunciated in *Pocahontas Tanning Co. v. St. Lawrence Boom & Manufacturing Co.*, 63 W. Va. 685, 60 S.E. 890 (1908), the petitioners focus on notice and claim that the respondents had actual knowledge of the petitioners' ownership interest in the garage:

> 1. Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.
>
> 2. A party is not entitled to protection as a bona fide purchaser, without notice, *unless he looks to every part of the title he is purchasing*, neglecting no source of information respecting it which common prudence suggests.
>
> 3. That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.
>
> 4. If one has knowledge or information of facts sufficient to put a reasonable man on inquiry, as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to prosecute the same; and, if he wholly neglects to make inquiry, the law will charge him with knowledge of all facts that such inquiry would have afforded.

*Id.*, Syl. Pts. 1, 2, 3, & 4. (emphasis added); *see also Goddard v. Hockman*, 246 W. Va. 661, 874 S.E.2d 773 (2022) (applying third syllabus point of *Pocahontas Tanning*). Based on the law set forth in *Pocahontas Tanning*, the petitioners contend the respondents' contact with the petitioners' realtor, which revealed that the petitioners had listed the garage as part of their veterinary practice property, constituted sufficient notice to defeat the respondents' bona fide purchaser status.

10

However, a closer examination of the facts in *Pocahontas Tanning*[7] reveals that the case fails to support the petitioners' argument. Specifically, the disputed restriction at issue in *Pocahontas Tanning* was present in the recorded deeds and would have been revealed by a thorough title search. Indeed, syllabus point two of *Pocahontas Tanning* specifically indicates that if a purchaser has "look[ed]to every part of the title he is purchasing" and still does not have notice, then he is a bona fide purchaser. *See* 63 W. Va. at 685, 60 S.E. at 890, Syl. Pt. 2. In this case the respondents "look[ed] to every part of the title [they were] purchasing," and still did not have notice, for the reason that there were

---

[7] In *Pocahontas Tanning*, the issue before the Court concerned which party, Pocahontas Tanning or St. Lawrence Boom & Manufacturing, had the rights to timber on certain disputed property. 63 W. Va. at 686-87, 60 S.E. at 890. A prior deed conveying the disputed property contained the following language: "But the pine and hemlock timber which are or were on this land are now hereby conveyed, as they were sold many years ago and were probably long since cut and removed." *Id.* (emphasis added). The Court found that there was a "clerical error" in the language, but in the context of the entire sentence, the word should have been "not" instead of "now." Thus, this reservation in the deed put McGraw on notice that the timber was not conveyed to him despite its omission in other deeds. *Id.* at 691-92, 60 S.E. at 892. The Court's decision ultimately turned on whether Pocahontas Tanning, as a purchaser from McGraw, also should have been on notice of previous conveyances in McGraw's chain of title. The Court found that the references in the recorded deeds should have been sufficient to put McGraw on notice of timber rights of others. *Id.* at 695, 60 S.E. at 894. Thus, the Court found that an inquiry conducted with "common prudence" also would have put Pocahontas Tanning on notice that the timber rights had been conveyed. *Id.* & Syl. Pt. 5 ("One who has taken deed for land, purporting on its face to convey all interests therein, but with reservation of pine and hemlock timber, and recital that such timber on the land has been sold, and afterwards acquires by deed without such reservation outstanding interest found to exist in title to the land, not conveyed by the former deed, is chargeable with notice of the rights of another, whom, by common prudence, he would have found to be owner of such timber by purchase prior to the deed containing such reservation and recital, and, as to that other, is not an innocent purchaser of interest in such timber by said deed for the outstanding interest.").

11

no recorded deeds or other records which would have put the respondents on notice.[8] *See id.*

Moreover, the evidence herein demonstrates that the respondents had no knowledge of the circumstances surrounding the sale of the 2205 First Street property to Mr. Hunt in 2009, including the addendum to the sales contract with Mr. Hunt to the effect that he was not purchasing the garage; no knowledge that the petitioners had the property subdivided; no contact or conversation with Mr. Hunt prior to his death regarding the garage; and no knowledge of the petitioners' use or maintenance of the garage during Mr. Hunt's lifetime. To the contrary, all the respondents knew was that the petitioners signed and recorded a deed conveying a house and garage to the mesne assignee, Mr. Hunt; that there was a deed of trust on the house and garage; that the described property being sold at the foreclosure sale included both the house and garage; and that the petitioners were nevertheless purporting to include the garage in a sale of the adjacent veterinary practice property.

---

[8] The case of *Harper v. Smith*, 232 W. Va. 655, 753, S.E.2d 612 (2012), relied upon by the petitioners, is also distinguishable. In *Harper*, a declaratory judgment case involving dispute over ownership of a parcel of property in Mingo County, the Court affirmed the circuit court's grant of summary judgment in favor of the respondent, Gavin Smith. *Id.* at 656, 753 S.E.2d at 613. The issue before the Court was whether Mr. Smith was a bona fide purchaser of the property. The Court ultimately decided the case by determining that the petitioners, the Harpers, lacked standing to challenge Mr. Smith's bona fide purchaser status; nonetheless, the Court went on to determine that the circuit court erred in finding that Mr. Smith was a bona fide purchaser where "he was on notice of a potential defect in the tax deed received by Marquis because notice of the right to redeem was not served upon the Bank of New York." *Id.* at 660, 753 S.E.2d at 617.

The circuit court concluded that

> [t]he testimony of the defendants was clearly to the effect that they thought that the plaintiffs were just wrong about owning the garage, rather than having some suspicion that there was perhaps some ancient mistake that needed remedied. Such a belief would be reasonable based on the facts. Such reasonable belief makes them *bona fide* purchasers.
>
> . . . .
>
> 27. The defendants could not possibly be on notice of whether any mistake was mutual between the plaintiffs and a deceased person they never met. To require purchasers to search for a mutual mistake between such remote conveyers to be *bona fide* purchasers will not be commissioned by this Court.
>
> 28. The plaintiffs signed the mistaken deed. Deeds are important documents. One is charged with knowing the contents thereof. Consequently, it was not just the realtor or the drafting attorney's mistake. The plaintiffs joined in and approved the mistake. The mistake should be rested on the ones that make it, not someone ten years later who has no knowledge of the mistake and scant information to discover it.

Based upon our review of the appendix record, we cannot conclude that the court erred in its determination that the respondents were bona fide purchasers. We therefore affirm the court's determination on this issue.

The petitioners also argued that the circuit court erred in finding that they had the burden to prove actual bad faith by the respondents. In support of this contention the petitioners rely solely upon the following conclusion of law made by the court:

13

23.    Although the evidence shows the defendants did know that the plaintiffs were attempting to sell the garage with the veterinary property, *the question is whether this knowledge, in the face of the mountain of public recordings to the contrary, was sufficient to assign them having acted in bad faith, or mala fides in continuing with their purchase.* Were they suspicious enough to think the plaintiffs really owned the garage somehow despite public records, or did they just think the plaintiffs were wrong, and nothing needed to be remedied? The burden of proving mala fides is on the plaintiffs.

(Emphasis added).  The petitioners contend that

[u]nder the court's view of Petitioners' burden, it was insufficient for Petitioners to prove the Respondents had actual notice of Petitioners' claim of ownership in the garage. The Court found that Petitioners had to prove both the Respondents' knowledge of their claim but further that Respondents had a subjective belief that Petitioners['] claim was legally correct - that "they really owned the garage somehow despite public records."

In contrast, the respondents argue that any issue as to the circuit court's reference to whether the evidence before it was sufficient to find the respondents had acted in "bad faith" or "mala fides" in continuing with their purchase of the property is purely semantic.  They contend that the court's use of the phrase "acted in bad faith" was simply another way of saying that it was the petitioners' burden to show the respondents lacked "good faith" or "bona fide" purchaser status.  *See Bona Fide*, Black's Law Dictionary (11th ed. 2019) ("Made in good faith[.]"); *compare Mala Fide*, Black's Law Dictionary (11th ed. 2019) ("In or with bad faith.").[9]  We agree with the respondents.

---

[9] The petitioners did not dispute this position in their reply brief.

14

It is clear from the full text of the circuit court's Conclusion of Law No. 23 that the court was simply stating the unexceptional proposition that it was the petitioners' burden to establish that the respondents were not bona fide purchasers when they purchased the disputed garage property at the foreclosure sale. As we have previously stated,

> [t]he rule is that 'When a claim to protection as a bona fide purchaser for value and without notice is involved, the burden is on the party denying the validity of the purchase to prove notice of his equity, and upon the other party to prove good faith and payment of an adequate consideration.' [Syl. Pt. 3,] *Cassiday Fork Boom & Lumber Co. v. Terry, Trustee*, 69 W.Va. 572, 73 S.E. 278 [(1912)]. 'He who avers that another purchased with notice of his superior right has the burden of proving such notice, either actual or constructive while such other must prove that he is a complete purchaser for a valuable consideration.' [Syl. Pt. 5,] *South Penn Oil Co. v. Blue Creek Development Co.*, 77 W.Va. 682, 88 S.E. 1029 [(1916)].

*Johnston*, 128 W. Va. at 107, 36 S.E.2d at 495. Succinctly stated, after considering all the evidence the circuit court properly determined that the petitioners failed to present "clear and convincing proof, beyond reasonable controversy" that the respondents had knowledge of the mistake made in the petitioners' prior deed. *See Robinson*, 44 W. Va. at 183, 28 S.E. at 798, Syl. Pt. 2.[10]

## IV. Conclusion

For the foregoing reasons, we affirm the circuit court's September 1, 2021, order.

---

[10] The respondents also raise an issue as to the applicability of laches in this case; however, because the respondents fail to assign error to the failure of the court to decide the applicability of laches to preclude the petitioners' request for the deed to be reformed, we decline to address the issue. *See* W. Va. R. App. P. 10(f).

Affirmed.